## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THE UNITED STATES OF
AMERICA and THE STATE OF
MICHIGAN,

                Plaintiffs,

*ex rels.* AMINE P. AMINE, M.D., and
REDWAN ASBAHI, M.D.,

                Plaintiffs/Relators,

v.

TEAM HEALTH HOLDINGS, INC.,
and MAHMUD ZAMLUT, M.D.,

                Defendants.

Case No. 2:21-cv-10799
Honorable Matthew F. Leitman

---

### DEFENDANT TEAM HEALTH HOLDINGS, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT WITH PREJUDICE

Defendant Team Health Holdings, Inc. ("TH") respectfully moves this Court to dismiss the Amended Complaint (ECF No. 20) (the "Complaint") filed by Relators Amine P. Amine, M.D. and Redwan Asbahi, M.D. (collectively, "Relators") with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a plausible claim upon which relief may be granted. In support thereof, TH states:

1.    Relators cannot recover under Counts I–VII (the "Fraud Counts")—which

        allege that TH violated the federal False Claims Act ("FCA") and the

Michigan Medicaid False Claims Act ("MMFCA")—because the United States' and the State of Michigan's (the "Governments") simultaneous settlement in this case and another *qui tam* action filed in this District, *United States ex rel. Saad v. IPC Hospitalists of Michigan, Inc., et al.*, Case No. 17-cv-13656 (the "Saad *Qui Tam*"), resolved the allegations concerning the same alleged overpayments by the Medicare and Michigan Medicaid programs. Notwithstanding the Relators' various allegations involving these Medicare and Michigan Medicaid claims for reimbursement upon which these counts are based, the Governments chose to settle three sets of allegations described herein. TH chose to settle the matter without an admission of liability (the "Fully Resolved Claims").

2.      Relators fail to state plausible grounds for relief in the Fraud Counts because Relators do not plead their fraud allegations with the requisite particularity under Federal Rule of Civil Procedure 9(b) and Mich. Ct. R. 2.112(B)(1).

3.      Count III is based upon a non-existent statute.

4.      Relators assert Counts VI and VII under the federal Anti-Kickback Statute ("AKS"), which does not contain a private right of action.

5.      Relators' FCA and MMFCA retaliation allegations in Counts VIII and IX fail as a matter of law because Relators failed to plead sufficient facts establishing that they were ever employees, contractors, or agents of TH.

6.    Relators are time-barred from bringing any retaliation claims based on their employment relationships with Inpatients Consultants of Michigan, P.C. ("ICM").

7.    Count IX must be dismissed because Relators fail to plead that they engaged in protected activity as defined by the MMFCA.

8.    Pursuant to Local Rule 7.1(a), Relators' consent to the relief requested was sought on February 12, 2024, February 20, 2024, March 29, 2024, and July 17, 2024 and consent was not given, necessitating this Motion.

WHEREFORE, for the reasons discussed more fully in TH's Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint with Prejudice, this Court should grant TH's Motion and dismiss Relators' Complaint in its entirety *with prejudice*. TH further requests that the Court grant any additional relief that the Court deems appropriate.

                         Respectfully submitted,

Dated: July 18, 2024        */s/ Thomas M. Schehr*
                         Thomas M. Schehr (P54391)
                         DYKEMA GOSSETT PLLC
                         Counsel for Team Health Holdings, Inc.
                         400 Renaissance Center, 37th Floor
                         Detroit, Michigan 48243
                         (313) 568-6659
                         tschehr@dykema.com

                         */s/ Lynn Shapiro Snyder*
                         Lynn Shapiro Snyder (DC 296483, FL 331651 and
                         NY 751602)

Melissa L. Jampol (NY 2964559 and NJ 235042017)
EPSTEIN BECKER & GREEN, P.C.
Counsel for Team Health Holdings, Inc.
1227 25th Street NW, Suite 700
Washington, DC 20037
(202) 861-0900
lsnyder@ebglaw.com
mjampol@ebglaw.com

*/s/ Timothy B. McConnell*
Timothy B. McConnell (TN 019136)
Laura M. Mallory (TN 031917, NY 4960340, and NJ 022492010)
MAYNARD NEXSEN P.C.
Counsel for Team Health Holdings, Inc.
4800 Old Kingston Pike, Suite 120
Knoxville, TN 37919
mailto:tmcconnell@maynardnexsen.com
lmallory@maynardnexsen.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THE UNITED STATES OF
AMERICA and THE STATE OF                  Case No. 2:21-cv-10799
MICHIGAN,                                 Honorable Matthew F. Leitman

       Plaintiffs,

*ex rels.* AMINE P. AMINE, M.D., and
REDWAN ASBAHI, M.D.,

       Plaintiffs/Relators,

v.

TEAM HEALTH HOLDINGS, INC.,
and MAHMUD ZAMLUT, M.D.,

       Defendants.

---

## DEFENDANT TEAM HEALTH HOLDINGS, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT WITH PREJUDICE

## STATEMENT OF ISSUES PRESENTED

1.      Whether Counts I–VII (the "Fraud Counts") of the Amended Complaint (ECF No. 20) (the "Complaint") filed by Amine P. Amine, M.D. ("Amine") and Redwan Asbahi, M.D. ("Asbahi") (collectively, "Relators") should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") because the Fraud Counts allege violations of the False Claims Act, 31 U.S.C. § 3730(b) ("FCA") and the Michigan Medicaid False Claims Act, Mich. Comp. L. §§ 400.601–400.615 ("MMFCA") were settled, released, and satisfied by the U.S. Government in this case (the "Relators *Qui Tam*") and in an earlier *qui tam* action filed in this District, captioned *United States ex rel. Saad v. IPC Hospitalists of Michigan, Inc., et al.*, Case No. 17-cv-13656 (the "Saad *Qui Tam*").

2.      Whether the Fraud Counts should be dismissed under Rule 12(b)(6) because Relators fail to plead any of the Fraud Counts with the particularity required under Fed. R. Civ. P. 9(b) ("Rule 9(b)") and Mich. Ct. R. 2.112(B)(1) ("M.C.R. 2.112(B)(1)").

3.      Whether Count III should be dismissed with prejudice under Rule 12(b)(6) because Relators bring Count III under a non-existent statute.

4.      Whether Counts VI and VII should be dismissed with prejudice because they are brought under the Anti-Kickback Statute ("AKS"), which does not contain a private right of action.

5.　　　Whether Counts VIII and IX should be dismissed with prejudice under Rule 12(b)(6) because Relators' retaliation claims fail as a matter of law because Defendant Team Health Holdings, Inc. ("TH") was not Relators' employer.

6.　　　Whether Relators' retaliation claims under Counts VIII and IX arising from their employment relationships with Inpatients Consultants of Michigan, P.C. ("ICM") should be dismissed with prejudice because Relators are time-barred from bringing  such claims.

7.　　　Whether Count IX should be dismissed with prejudice under Rule 12(b)(6) because Relators failed to plead that they engaged in protected activity as defined by the MMFCA.

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

Pursuant to Local Rule 7.1(b), the controlling or most appropriate authorities for the relief sought herein, in addition to Rules 9(b) and 12(b)(6), are:

1.     As to Relators' Fraud Claims (Counts I–V): 31 U.S.C. § 3729(a); Mich. Comp. L. §§ 400.601–400.615; *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905 (6th Cir. 2017); *United States ex rel. Hockenberry v. OhioHealth Corp.,* No. 16-cv-4064, 2017 WL 4315016 (6th Cir. Apr. 14, 2017); *United States ex rel. Eberhard v. Physicians Choice Lab. Servs., LLC*, 642 F. App'x 547 (6th Cir. 2016); and *United States ex rel. MSP WB, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-12165, 2024 WL 1316223 (E.D. Mich. Mar. 26, 2024).

2.     As to Relators' AKS Claims (Counts VI and VII): 42 U.S.C. § 1320a-7(b); 42 U.S.C. § 1320a-7(b)(1); and *Concord EMS v. Oakwood Healthcare, Inc.*, No. 14-cv-13012, 2015 WL 13036949 (E.D. Mich. Mar. 25, 2015).

3.     As to Relators' Retaliation Claims (Counts VIII and IX): 31 U.S.C. 3730(h)(3); *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056 (6th Cir. 2014); *Demski v. United States Department of Labor*, 419 F.3d 488 (6th Cir. 2005); *Bonds v. Compass Grp.*, No. 22-cv-11491, 2024 WL 1315852 (E.D. Mich. Mar. 27, 2024); and *United States ex rel. Yanity v. J&B Med. Supply Co.*, No. 08–11825, 2012 WL 4811288 (E.D. Mich. Oct. 10, 2012); *El-Khalil v. Oakwood Healthcare, Inc.*, 23 F.4th 633, 636 (6th Cir. 2022).

## <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUES PRESENTED.................................................................. ii

STATEMENT OF CONTROLLING AUTHORITY..............................................iv

TABLE OF AUTHORITIES ................................................................................ viii

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND...................................................................................2

    I.   The Prior Saad *Qui Tam*............................................................................2

    II.  This Case: The Subsequent Qui Tam ......................................................3

        A.  The Relators and Zamlut .....................................................................7

            1.   Relators Amine P. Amine, M.D. and Redwan Asbahi, M.D. .......3

            2. Defendant Zamlut..........................................................................5

        B.   The Allegations....................................................................................6

            1. The allegedly fraudulent billing scheme .......................................6

            2. The alleged retaliation...................................................................7

        C.   The Governments' Joint Investigation and Settlement of FCA and MMFCA Allegations in the *Saad* Complaint and Relators' Complaint ...........................................................................................................7

        D.   Relators' Decision to Pursue the Complaint that Existed Prior to the Governments' Settlements ................................................................10

LEGAL ARGUMENT.........................................................................................10

    I.   Standard for Dismissal under Rule 12(b)(6).........................................10

II. Counts I, II, IV, and V Must Be Dismissed Because They Are Based Upon Medicare and Michigan Medicaid Claims That Have Been Fully Resolved……………………………………………………………..…11

III. The Fraud Counts Must Be Dismissed Because Relators Fail to Plead Their Fraud Allegations with Sufficient Particularity under Rule 9(b) and M.C.R. 2.112(B)(1)…………………………………………………….13

   A. The Elements of Properly Pleaded FCA and MMFCA Claims……..14

   B. Relators Fail to Plead Sufficient Facts Establishing that any Medicare or Michigan Medicaid Claims were Actually Presented to the Governments for Payment…………………………………………..17

      1. Relators do not plead any facts demonstrating that they possess direct, first-hand knowledge of TH's billing practices………...17

      2. Relators do not plead any representative examples of their allegations in the Fraud Counts…………………………………18

         a. Relators fail to allege representative examples of billing for medically unnecessary consults…………………………..19

         b. Relators fail to allege representative examples of billing for services not provided………………………………………19

         c. Relators fail to plead representative examples of "kickbacks" relating to the purported "systemic fraud."………………..21

   C. Relators Fail to Properly Plead the Remaining Elements of Their FCA and MMFCA Claims (Falsity, Knowledge, and Materiality)………………………………………………………..22

      1. Relators fail to plead sufficient allegations of falsity……………23

      2. Relators fail to plead sufficient allegations of TH's knowledge of any false claims, statements, or records………………………...23

      3. Relators fail to plead sufficient allegations of materiality……….24

IV.  Count III Must Be Dismissed Because It Is Based upon a Statute that Does Not Exist…………………………………………………………...25

V.  Counts VI and VII Must Be Dismissed Because the AKS Does Not Contain a Private Right of Action……………………………………...25

VI.  Count VIII Alleging FCA Retaliation Must Be Dismissed Because Relators Were Not Employees of TH…………………………………26

VII.  Relators Are Time-Barred From Bringing Any Retaliation Claims Arising From Their Employment Relationships With ICM…………...28

VIII.  Count IX Alleging MMFCA Retaliation Must Be Dismissed Because TH Did Not Employ Relators, and Relators Failed to Plead How They Engaged in Protected Activity as Defined by the MMFCA……………29

CONCLUSION…………………………………………………………………...30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amini v. Oberlin College*,
    259 F.3d 493 (6th Cir. 2001) ...............................................................................3

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................10

*Bonds v. Compass Grp.*,
    No. 22-cv-11491, 2024 WL 1315852 (E.D. Mich. Mar. 27, 2024) ................. 30

*Concord EMS v. Oakwood Healthcare, Inc.*,
    No. 14-cv-13012, 2015 WL 13036949 (E.D. Mich. Mar. 25, 2015) ................26

*Demski v. United States Department of Labor*,
    419 F.3d 488 (6th Cir. 2005) ...............................................................................27

*El-Khalil v. Oakwood Healthcare, Inc.*,
    23 F.4th 633 (6th Cir. 2022) ............................................................................... 29

*El-Khalil v. Tedeschi*,
    No. 18-cv-12759, 2019 WL 2325610 (E.D. Mich. May 31, 2019) ...................28

*Gavitt v. Born*,
    835 F.3d 623 (6th Cir. 2016) ...............................................................................4

*Greene v. Benefit Mortg. Corp.*,
    No. 08-cv-12968, 2009 WL 56056 (E.D. Mich. Jan. 8, 2009) ..........................14

*Merritt v. Mountain Laurel Chalets, Inc.*,
    96 F. Supp. 3d 801 (E.D. Tenn. 2015) ...............................................................27

*Michigan Millers Mut. Ins. Co. v. Travelers Indem. Co. of Connecticut*,
    No. 16-cv-11767, 2016 WL 7100539 (E.D. Mich. Dec. 6, 2016) ......................4

*Mikhaeil v. Walgreens Inc.*,
    No. 13-cv-14107, 2015 WL 778179 (E.D. Mich. Feb. 24, 2015) .....................30

*Nationwide Mut. Ins. Co. v. Darden*,
　503 U.S. 318 (1992)..................................................................................27

*Price v. O'Donnell*,
　No. 18-cv-13078, 2019 WL 5290809 (E.D. Mich. Sept. 27, 2019)....................3

*Sanderson v. HCA–The Healthcare Co.*,
　447 F.3d 873 (6th Cir. 2006) ...............................................................17

*United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*,
　874 F.3d 905 (6th Cir. 2017) ...............................................................16

*United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*,
　838 F.3d 750 (6th Cir. 2016) .....................................................15, 16, 24

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
　342 F.3d 634 (6th Cir. 2003) ...............................................................15

*United States ex rel. Bledsoe v. Cmty. Health Sys.*,
　501 F.3d 493 (6th Cir. 2007) .........................................................15, 17

*United States ex rel. Owsley v. Fazzi Assocs., Inc.*,
　16 F.4th 192 (6th Cir. 2021) ...............................................................18

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*,
　618 F.3d 505 (6th Cir. 2010) ...............................................................15

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*,
　532 F.3d 496 (6th Cir. 2008) ...............................................................16

*United States v. Health Possibilities, P.S.C.*,
　207 F.3d 335 (6th Cir. 2000) ...............................................................11

*United States ex rel. Yanity v. J&B Med. Supply Co.*,
　No. 08–11825, 2012 WL 4811288 (E.D. Mich. Oct. 10, 2012)........................ 29

*United States ex rel. Sheldon v. Kettering Health Network*,
　816 F.3d 399 (6th Cir. 2016) .........................................................15, 16, 22, 24

*United States v. Marlar*,
　525 F.3d 439 (6th Cir. 2008) ...............................................................15

*United States ex rel. Poteet v. Medtronic, Inc.*,
552 F.3d 503 (6th Cir. 2009) ...................................................................25

*United States ex rel. Hockenberry v. OhioHealth Corp.*,
No. 16-cv-4064, 2017 WL 4315016 (6th Cir. Apr. 14, 2017) ...........................16

*United States ex rel. Eberhard v. Physicians Choice Lab. Servs., LLC*,
642 F. App'x 547 (6th Cir. 2016) ........................................................17, 19, 23

*United States ex rel. Rahimi v. Rite Aid Corp.*,
No. 11-cv-11940, 2019 WL 10374285 (E.D. Mich. Dec. 12, 2019) .............4, 25

*United States v. SavaSeniorcare LLC*,
2021 WL 1663579 (M.D. Tenn. Apr. 28, 2021) ....................................25

*United States ex rel. MSP WB, LLC v. State Farm Mut. Auto. Ins. Co.*,
No. 19-cv-12165, 2024 WL 1316223 (E.D. Mich. Mar. 26, 2024) ..................18

*United States ex rel. Hirt v. Walgreen Co.*,
846 F.3d 879 (6th Cir. 2017) ...................................................................15

*United States v. Wal-Mart Stores E., LP*,
858 F. App'x 876 (6th Cir. 2021) ....................................................14, 23

*Universal Health Svcs. v. United States ex rel. Escobar*,
579 U.S. 176 (2016)...............................................................................24

*Vander Boegh v. EnergySolutions, Inc.*,
772 F.3d 1056 (6th Cir. 2014) .................................................................. 28

*Welch v. Decision One*,
No. 12-cv-10045, 2012 WL 4008730 (E.D. Mich. June 25, 2012).....................3

*Yuhasz v. Brush Wellman, Inc.*,
341 F.3d 559 (6th Cir. 2003) ...................................................................15

**Statutes**

28 U.S.C. § 1746 ......................................................................................20

31 U.S.C. 3730(h)(3) .................................................................................29

31 U.S.C. §3720(a)(1)(G) .........................................................................25

31 U.S.C. § 3729(a)(1) ................................................................................14

31 U.S.C. § 3729(a)(1)(A) .................................................................13,14, 22

31 U.S.C. § 3729(a)(1)(B) ...........................................................................13,14

31 U.S.C. § 3730(b)(5) ...............................................................................24

31 U.S.C. § 3730(h)(1) ...............................................................................26

42 U.S.C. § 1320a-7(b) ........................................................................... 25, 26

42 U.S.C. § 1320a-7(b)(1) ...................................................................... 25, 26

Federal False Claims Act ..........................................................................*passim*

Michigan Medicaid False Claims Act ........................................................*passim*

**Other Authorities**

Fed. R. Evid. 201(b)(2) .............................................................................3,4

Federal Rule of Civil Procedure 9(b)..........................................................*passim*

Federal Rule of Civil Procedure 12(b)(6) ..................................................*passim*

Mich. Comp. L. § 400.610a(4). ..................................................................25

Mich. Comp. L. § 400.610c .......................................................................29

Mich. Ct. R. 2.112(B)(1)...........................................................................*passim*

## INTRODUCTION

The Court should dismiss the Complaint in its entirety with prejudice under Rule 12(b)(6) for several reasons.

First, the Fraud Counts (Counts I–VII) must be dismissed because the claims for Medicare and Medicaid reimbursement at issue were already settled, released and satisfied. The United States and the State of Michigan's (the "Governments") simultaneous settlement in this case (the "Relators *Qui Tam*") and in an earlier *qui tam* action filed in this District, the Saad *Qui Tam*, resolved the fraud allegations concerning the same alleged Medicare and Medicaid overpayment claims at issue here (the "Fully Resolved Claims"). This Court and the Saad *Qui Tam* Court dismissed the fraud allegations with prejudice, so these same allegations cannot serve as the basis for any further causes of action under FCA and the MMFCA.

Second, the Fraud Counts suffer from other fatal deficiencies. Relators fail to plead any of their fraud allegations with the particularity required under Rule 9(b) and M.C.R. 2.112(B)(1). Relators bring Count III under a non-existent federal statute. Relators bring Counts VI and VII under the AKS, which does not contain a private right of action.

Third, Counts VIII and IX fail as a matter of law. The fundamental premise of Relators' retaliation allegations is that TH was Relators' employer. But Relators' own employment contracts confirm that this allegation is false, requiring dismissal

of these counts. Further, Relators are time-barred from bringing the FCA and MMFCA retaliation allegations arising from their employment relationships with ICM because the alleged retaliation occurred outside of the applicable statute of limitations. Count IX also fails because Relators did not allege they were retaliated against for engaging in protected activity under the MMFCA.

Thus, as explained in more detail below, the Court should dismiss the Complaint in its entirety with prejudice.

## FACTUAL BACKGROUND[1]

### I. The Prior Saad *Qui Tam*

In 2017, Chadi Y. Saad, M.D. ("Saad") filed suit in this Court pursuant to the *qui tam* provisions of the FCA and MMFCA. *See* Saad *Qui Tam* Compl. ("Saad Compl."), Saad *Qui Tam* ECF No. 1 ("Saad ECF"). In the two-count complaint, Saad alleged that his employers, IPC Hospitalists of Michigan, Inc., ICM, and IPC Healthcare f/k/a IPC the Hospitalist Company[2] violated the FCA and the MMFCA. Saad asserted that several physicians, including a defendant in this action, Mahmud Zamlut, M.D. ("Zamlut"), each billed the Governments for more expensive medical services than were actually performed. *See* Saad Compl. at ¶ 3. Saad also alleged that physicians, including Zamlut, billed for more inpatient services or procedures

---

[1] Facts from the Complaint are treated as true solely for purposes of this Motion.

[2] *See infra* note 8.

than any physician could possibly physically perform within a single day at a single facility, much less when the travel to and from the multiple facilities was considered, and that there was billing for services not rendered. *See id.* at ¶¶32, 47, 88.[3]

## II.    This Case: The Subsequent *Qui Tam*

### A.    The Relators and Zamlut

#### 1.    Relators Amine P. Amine, M.D. and Redwan Asbahi, M.D.

On April 9, 2021, Relators filed their original *qui tam* Complaint (ECF No. 1) under seal on behalf of the Governments against Defendants TH and Zamlut ("Original Complaint"). Relators filed their Complaint on June 30, 2023.[4]

---

[3] A court may take judicial notice of information outside of the complaint "if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(c)(2). "If allegations in the Complaint are contradicted by public records or other evidentiary materials of which the court may take judicial notice, the court is not bound to accept those allegations as true." *Price v. O'Donnell*, No. 18-cv-13078, 2019 WL 5290809, at *2 (E.D. Mich. Sept. 27, 2019). A court may consider documents "not formally incorporated by reference or attached to a complaint if the document(s) is referred to in the complaint and is central to the plaintiff's claim." *Welch v. Decision One*, No. 12-cv-10045, 2012 WL 4008730 at *2 (E.D. Mich. June 25, 2012). A court may also take into account "matters of public record" when "determining whether to grant a Rule 12(b)(6) motion." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

[4] The Governments' settlement occurred ***after*** Relators filed their Complaint on June 30, 2023. *See* ECF Nos. 20 and 29; Attached hereto as Exhibit A is a true and correct copy of Press Release, U.S. Attorney's Office of the E.D. of Mich., *Hospitalist Companies Agree To Pay Nearly $4.4 Million To Settle False Claims Act Allegations*, https://www.justice.gov/usao-edmi/pr/hospitalist-companies-agree-pay-nearly-44-million-settle-false-claims-act-allegations (Oct. 17, 2023) (the "Press Release"). This Court can take judicial notice of the Press Release. *See supra* note 3; *see also* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it…can be accurately and readily

3

Relators allege that Amine was employed from approximately July 2017 until August 2020 and that Asbahi was employed from approximately July 2016 through the fall of 2020. Compl. at ¶¶ 11–12. Relators' employment was governed by various contracts, which are referenced throughout the Complaint. *Id.* at ¶¶ 60, 63, 83, 84, 154, 158. Neither Amine nor Asbahi had an employment contract with TH.

Asbahi had a contract to work at the Detroit Medical Center ("DMC") until he resigned in 2019. *Id.* ¶¶ 10, 83, 84, 158*; see also* Exhibit B, attached hereto is a true and correct copy of Asbahi 5/26/16 Emp. Cont. (reflecting ICM as Asbahi's employer).[5] ICM was the counterparty to Asbahi's contract to work at DMC.[6]

---

determined from sources whose accuracy cannot reasonably be questioned."); *United States ex rel. Rahimi v. Rite Aid Corp.,* No. 11-cv-11940, 2019 WL 10374285, *2 (E.D. Mich. Dec. 12, 2019) (noting that "to determine whether the [FCA's] public disclosure bar applies here, the Court will take judicial notice of the government documents and news articles attached to Defendant's motion to dismiss[,]" including a press release from the Connecticut Attorney General's Office).

[5] This Court can consider Relators' employment contracts without converting this Motion to a summary judgment motion, as they are referenced in, and integral to, the Complaint. *See Gavitt v. Born,* 835 F.3d 623, 640 (6th Cir. 2016). Moreover, "the Court is not bound to accept as true unwarranted allegations or factual inferences in the Complaint, such as allegations contradicted by public records and other evidentiary materials of which the Court may take judicial notice." *Michigan Millers Mut. Ins. Co. v. Travelers Indem. Co. of Connecticut*, No. 16-cv-11767, 2016 WL 7100539 at *5 (E.D. Mich. Dec. 6, 2016) (internal quotation marks and citation omitted).

[6] Asbahi had another contract with ICM for work he performed at DMC on an "as needed basis" or PRN basis. However, based on Asbahi's reference to his separate contract to work at Highpoint Health ("HP Health"), located in Lawrenceburg,

Asbahi had a separate contract to provide services at HP Health on an "as needed basis." Compl. at ¶ 84; *see also* Exhibit C, attached hereto is a true and correct copy of Asbahi 8/23/18 Emp. Cont. Hospital Medicine Services of Tennessee, P.C. ("HMST") was the counterparty to Asbahi's contract to work at HP Health. *Id*. Asbahi alleges he was "completely terminated" by Zamlut "in or around October of 2020." Compl. ¶ 83, 85.

Amine provided medical services under contracts at DMC and HP Health. *Id*. at ¶¶ 60, 64, 65, 68. Amine also entered into contracts of employment with ICM and HMST. Compl. at ¶ 11, 87, 153-54; *see also* Exhibit D, attached hereto is a true and correct copy of Amine 11/16/2016 Emp. Cont. (reflecting ICM as Amine's employer); Exhibit E, attached hereto is a true and correct copy of Amine 10/30/2018 Emp. Cont. (reflecting HMST as Amine's employer and that Amine's employment at HP Health began on November 1, 2018).

### 2.   Defendant Zamlut

Relators allege that Zamlut perpetrated the fraud, often alongside other physicians whom Relators conveniently fail to identify by name, by location, or in

---

Indiana (*see* Compl. at ¶ 59), on an "as needed" basis in paragraph 84 of the Complaint, TH assumes that Asbahi's omission of a similar reference in paragraph 83 means that Asbahi is referring to his full-time contract. Nonetheless, Asbahi was no longer employed by ICM and working at the DMC as of 2019. *See* Compl. at ¶ 84.

number. *See generally* Compl. at ¶¶ 55–114.[7]

### B.    The Allegations

#### 1.    The allegedly fraudulent billing scheme

The Complaint is virtually identical to the Original Complaint with respect to the Fraud Counts, including the allegations giving rise to Relators' FCA, MMFCA, and AKS counts. Relators assert that their "pod leader" Zamlut—"as well as other physicians" who practiced at DMC and HP Health in Zamlut's "pod"—were involved in a "systemic" and "seismic" fraudulent medical billing scheme in which they submitted claims to the Medicare and/or the Michigan Medicaid programs for unnecessary pulmonology consults and for patients they never treated. *See* Compl. at pp. 1–2 ("Introduction") and ¶¶ 58–59, 62, 72–73, 77, 79–80, 85, 88–98. In other words, Relators allege Zamlut and his "pod" fraudulently billed for services not rendered, which is one of the three sets of fraud allegations settled by the Governments. *See* Ex. A, Press Release.

Relators further allege that the fraud had been ongoing "for at least the [] 7 years" preceding their filing of the Complaint in June 2023 (*i.e.*, since June of 2016). *See, e.g.*, Compl. at ¶ 97. But Amine's two separate employment relationships from "approximately July 2017 to August of 2020" do not cover conduct that allegedly

---

[7] Nothing on the docket indicates Relators have served Zamlut with the Complaint or that he waived service.

occurred more than a year prior. *See* Exs. D & E; Compl. at ¶ 11. Additionally, Asbahi had two separate employment relationships that lasted only four-and-one-half years—from July 2016 until October of 2020. *See* Exs. B & C; Compl. at ¶ 12; 158. Relators do not allege how Amine has direct knowledge of the purported fraud before his employment began or how either Relator obtained this knowledge after their employment ended.

### 2.    The alleged retaliation

On June 30, 2023, Relators added two retaliation causes of action to the Complaint. Relators' factual allegations related to protected activity fall into one of two categories: (1) internal complaints and (2) refusal to engage in the alleged fraud. Compl. at ¶¶ 157, 164. With respect to the first category, Relators allege they both complained about the alleged fraud to TH executives. *Id.* ¶¶ 148–50. With respect to the second category, Relators allege they were both terminated, in part, "for refusing to participate in the fraudulent billing scheme" outlined in the Complaint. *Id.* ¶ 158.

**C.    The Governments' Joint Investigation and Settlement of FCA and MMFCA Allegations in the *Saad* Complaint and Relators' Complaint.**

The Saad *Qui Tam* and the Relators *Qui Tam* were investigated at the same time by the U.S. Attorney's Office for the Eastern District of Michigan and the State of Michigan, as both Governments were concerned essentially with the same allegedly fraudulent billing schemes. Then, six years from when Saad started this

matter, on October 17, 2023, the U.S. Attorney's Office issued a Press Release announcing that IPC Hospitalists of Michigan, Inc., ICM, IPC Healthcare f/k/a IPC the Hospitalist Company, and TH[8] entered into a "settlement" that resolved "three sets of allegations" in the Saad and the Relators *Qui Tams* as a package. *See* Ex. A.

As noted in the Press Release, the settlement for the Saad and the Relators *Qui Tams* included three categories of allegations:

(1) "the defendants' doctors regularly upcoded certain Current Procedural Terminology (CPT) codes typically used to report the most complex services relating to the evaluation and management of hospitalized patients. Upcoding is alleged fraudulent medical billing in which a claim is submitted for payment regarding a service that is more expensive than the service that was actually performed";

(2) "the defendants allowed their hospitalists to regularly bill for impossible days within the State of Michigan. An impossible day occurs when a hospitalist purports to provide such a high volume of inpatient services or procedures in one day that there is no way the hospitalist reasonably could have performed them all"; and

(3) "services and procedures purportedly rendered by the same provider, on the same day, and billed to the Medicare and Medicaid programs for beneficiaries located in Michigan and Indiana, which the government contends were not rendered to the Michigan-based beneficiaries."

Ex. A. The Press Release states that the "claims resolved by the settlement are allegations only; there has been no determination of liability."[9] *Id.*

---

[8] The Press Release noted that the "defendants are related companies that employ and provide hospitalists to Michigan hospitals." Ex. A.

[9] In addition, as part of the settlement, TH was required to withdraw all of the Fully

The Governments received "a total of $4,384,618 to resolve allegations that [Defendants] violated the False Claims Act by upcoding inpatient hospital services, allowing their doctors to bill for more services than they could possibly provide in one day, and billing for services not rendered." Ex. A; *see also* ECF No. 29-1. Relators Saad, Amine, and Asbahi each received their share of this total settlement as explained in the Governments' Press Release, which announced that "Relator Chadi Saad will receive $571,900.00 as part of the settlement. Relators Redwan Asbahi and Amine will receive $195,408 as part of the settlement." Ex. A.

The Saad *Qui Tam* was dismissed with prejudice on September 25, 2023. *See* Saad ECF No. 53. Relators' Complaint was unsealed on September 26, 2023, after the Governments filed a Notice of Intervention for the purpose of settlement. ECF No. 27.

On November 6, 2023, this Court ordered that the "claims against Defendant TeamHealth in this action that arise out of the Covered Conduct, as defined in the Settlement Agreement, are dismissed with prejudice" as to the Governments and Amine and Asbahi. ECF No. 31; *see also* ECF 29-1. On November 14, 2023, the Governments filed a notice reflecting their decision to withdraw, in part, their intervention in this action, noting that (i) the Governments and TH "have settled a

---

Resolved Claims on appeal or otherwise being disputed with the Governments. *See* ECF No. 29-1 at ¶ 6; Ex. F, Saad Settlement Agreement at ¶ 12.

portion of this action that relates to the claims arising out of the Covered Conduct," and (ii) the Governments "withdraw their intervention as to all other claims not within the Covered Conduct in this Action to the extent that such claims exist as well as all claims" against Zamlut. ECF No. 33; *see also* ECF No. 29-1.

### D. Relators' Decision to Pursue the Complaint that Existed Prior to the Governments' Settlements

After the Governments' joint investigation and settlement[10] Relators, however, did not seek leave to file a second amended complaint to clarify and narrow their remaining allegations. Instead, Relators chose to pursue the Complaint as if the settlement never happened, making this Motion and a needless round of litigation regarding the Fraud Counts necessary. *See* ECF No. 35.

## <u>LEGAL ARGUMENT</u>

## I. Standard for Dismissal under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

---

[10] The settlement did not resolve Counts VIII and IX (Relators' retaliation allegations).

**II.      Counts I, II, IV, and V Must Be Dismissed Because They Are Based Upon Medicare and Michigan Medicaid Claims That Have Been Fully Resolved.**

Counts I, II, IV, and V comprise Relators' causes of action under the FCA and MMFCA. These allegations are based upon the same Medicare and Michigan Medicaid claims that have already been settled, released, and satisfied by the Governments. Therefore, these counts must be dismissed with prejudice.

The harms alleged in these counts belong to the Governments and not to Relators. *See United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 340 (6th Cir. 2000) ("[T]he harms redressed by the FCA belong to the government . . ."). As such, it was the Governments' prerogative to investigate and settle whatever fraud allegations the Governments believed had merit. The Governments conducted a joint investigation of all fraud allegations in both the Saad Complaint and the Relators' Complaint because the FCA and MMFCA allegations in both actions are predicated upon the same allegedly fraudulent scheme. *See* Ex. A.

The Saad *Qui Tam* alleged that several physicians, including Zamlut, each billed the United States and the State of Michigan for more expensive medical services than were actually performed. *See* Saad Compl. at ¶ 3. Saad alleged that physicians often billed for more inpatient services or procedures than any physician could possibly physically perform within a single day at a single facility, much less when the travel to and from the multiple facilities where these services were

11

allegedly provided is factored in. *See id*. at ¶¶ 32, 47.

Relators similarly allege that Zamlut and other physicians often billed patients for specialty consults that were medically unnecessary to receive a higher billing rate. Compl. at ¶¶ 77, 79. Relators assert that Zamlut "would often bill for the higher rate for a specialist consult in his capacity as a 'pulmonologist'" and "demanded every patient be referred to him for a pulmonology consult even when it was clear that no medical basis existed for these patients to be seen by a pulmonologist." *Id.* at ¶¶ 62, 89. In other words, the Relators' Complaint and the Saad Complaint similarly allege that the same group of physicians were engaged in practices aimed at billing the Governments for more expensive medical services than were actually performed.

And like Saad, Relators allege that Zamlut and other physicians billed for more services and procedures at two different care sites in two different states than they could possibly have provided in a single day, including through what Relators allege as "ghost rounding." *Compare* Compl. at ¶¶ 80, 88, *with* Saad Compl. at ¶¶ 92–112. Significantly, there is a material overlap of time between the fraud allegations raised in Relators' Complaint and those raised in the Saad Complaint. The Saad Settlement Agreement covered June 17, 2014 to March 8, 2023. *See* Exhibit F, attached hereto is a true and correct copy of Saad Settlement Agreement.

The settlement agreement in this matter covered January 1, 2019 through June 30, 2023. *See* ECF 29-1.

The Governments had a full and fair opportunity to investigate the fraud allegations raised by Relators. The settlement "resolve[d] allegations that [Defendants] violated the False Claims Act by upcoding inpatient hospital services, allowing their doctors to bill for more services than they could possibly provide in one day, and billing for services not rendered." Ex. A. The Press Release does not distinguish between the Saad Complaint and Relators' Complaint, both of which were pending at the time of the Governments' investigation, and only refers to ***one*** ***"settlement." *See id.* (emphasis added). The Medicare and Medicaid claims for reimbursement that underly Relators' allegations have been paid back and satisfied, and the Governments received "a total of $4,384,618 . . ." *Id.* Relators Saad, Amine, and Asbahi each received their share of this total settlement. *Id.* In sum, Relators have no right to take another stab at pursuing the Fully Resolved Claims. Instead, these allegations should be dismissed with prejudice as they are released by the settlement.

**III.    The Fraud Counts Must Be Dismissed Because Relators Fail to Plead Their Fraud Allegations with Sufficient Particularity under Rule 9(b) and M.C.R. 2.112(B)(1).**

Relators allege that TH violated 31 U.S.C. § 3729(a)(1)(A) in Count I and 31 U.S.C. § 3729(a)(1)(B) in Count II. Relators bring the same causes of action under

the MMFCA in Counts IV and V. The alleged "kickbacks" set forth in Counts VI and VII of the Complaint (in which Relators assert a non-existent civil cause of action for violations of the AKS) are based upon the same alleged nebulous fraudulent conduct.

Accordingly, the Court can consider all fraud-related allegations presented in the Complaint together. *See United States v. Wal-Mart Stores E., LP*, 858 F. App'x 876, 880 (6th Cir. 2021) ("[T]he FCA and MMFCA are identical in every relevant respect here and are frequently analyzed in tandem.").[11]

### A.      The Elements of Properly Pleaded FCA and MMFCA Claims

The FCA imposes civil liability on any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government. . . a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (B).

To establish liability pursuant to Section 3729(a)(1), a relator must allege:

[1] that the defendant [made] a false statement or create[d] a false record [2] with actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the information; [3] that the defendant . . . submitted a claim for payment to the federal government; . . . and

---

[11] For brevity, TH refers to the FCA and Rule 9(b) in this section, but the arguments also encompass the MMFCA and M.C.R. 2.112(B)(1). *See Greene v. Benefit Mortg. Corp.*, No. 08-cv-12968, 2009 WL 56056, at *3 (E.D. Mich. Jan. 8, 2009) ("[Defendant] correctly notes that Fed. R. Civ. P. 9(b) and MCR 2.112(B)(1) require fraud to be pled with particularity.").

14

[4] that the false statement or record [was] material to the Government's decision to make the payment sought in the defendant's claim.

*United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 408 (6th Cir. 2016) (quoting *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 618 F.3d 505, 509 (6th Cir. 2010) ("*SNAPP II*")).

Relators must plead their fraud allegations with particularity under Rule 9(b). *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003). This standard is a "stringent" one. *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 838 F.3d 750, 768 (6th Cir. 2016) ("*Prather I*"). Rule 9(b) "demands specifics." *United States ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 881 (6th Cir. 2017). It is not enough to allege mere "inferences and implications." *Id.* At a minimum, Relators must plead "'the time, place, and content of the alleged misrepresentation . . .; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *United States v. Marlar*, 525 F.3d 439, 444 (6th Cir. 2008) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) ("*Bledsoe I*")).

When "a complaint alleges 'a complex and far-reaching fraudulent scheme,' then that scheme must be pleaded with particularity and the complaint must also 'provide [] examples of specific' fraudulent conduct that are 'representative samples' of the scheme." *Id.* at 444–45 (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 509 (6th Cir. 2007) ("*Bledsoe II*")). Failure to

15

identify specific fraudulent claims requires dismissal of a complaint. *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008) ("*SNAPP I*").

Rule 9(b) "does not permit a False Claims Act Relator merely to describe a private scheme in detail but then to allege simply . . . that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *United States ex rel. Hockenberry v. OhioHealth Corp.,* No. 16-cv-4064, 2017 WL 4315016, at *2 (6th Cir. 2017) (internal quotation marks and citation omitted). A relator's allegations must describe the "specific intervening conduct" between every step of the process forming the allegedly false claim. *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 915 (6th Cir. 2017). Typically, a successful relator satisfies this threshold by alleging that he "work[s] in the defendants' billing departments," or has first-hand knowledge that false claims were actually billed based on "discussions with employees directly responsible for submitting claims to the government." *Prather I*, 838 F.3d at 769; *Kettering*, 816 F.3d at 413.

**B.** **Relators Fail to Plead Sufficient Facts Establishing that any Medicare or Michigan Medicaid Claims were Actually Presented to the Governments for Payment.**

1.  Relators do not plead any facts demonstrating that they possess direct, first-hand knowledge of TH's billing practices.

Relators fail to properly allege a critical element of an FCA claim—that TH actually presented a claim (false or not) to the Governments for payment. *See Bledsoe II*, 501 F.3d at 505.

Relators do not allege that they worked in a billing department, nor do Relators allege that they had access to any systems or databases through which billing specialists submitted claims for medical services to the Medicare or the Michigan Medicaid programs for payment. Relators merely allege that they "had access to "patient charts and physician schedules" —not access to Medicare or Medicaid billing information. *See* Compl. at ¶ 158. Relators do not allege that anyone with billing access provided Relators with information or evidence to substantiate that even a single false or fraudulent claim was ever submitted for reimbursement and paid. Instead, Relators apparently "assume, on the basis of speculation, 'that claims requesting illegal payments must have been submitted, were likely submitted[,] or should have been submitted' to the government." *United States ex rel. Eberhard v. Physicians Choice Lab. Servs., LLC*, 642 F. App'x 547, 553 (6th Cir. 2016) (quoting *Sanderson v. HCA–The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)). "Rule 9(b) does not permit such speculation." *Id.*

17

Relators allege that, "upon information and belief," the fraud scheme had been ongoing for "over at least the past 7 years." Compl. at ¶ 97. The Complaint was filed on June 30, 2023, and seven years prior to that date was June 30, 2016. *See* Compl. at ¶ 114. However, Relators admit that neither of them were employed during the entirety of that seven-year time period. Relators do not allege how they had personal knowledge of any false or fraudulent claims for services provided by Zamlut (or any other physician) that were actually submitted to and paid by the Medicare or the Michigan Medicaid programs before or after their dates of employment. Moreover, Relators do not allege that the "portal" provided Relators with access to any Medicare or Medicaid billing or payment information. *See id.* at ¶ 158.

Because Relators' Complaint is devoid of any factual allegations establishing that either Amine or Asbahi has personalized knowledge of TH or Zamlut's billing practices, Relators "must identify a 'representative claim that was actually submitted to the government for payment'" to satisfy Rule 9(b). *United States ex rel. MSP WB, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-12165, 2024 WL 1316223, at *5 (E.D. Mich. Mar. 26, 2024) (quoting *United States ex rel. Owsley v. Fazzi Assocs., Inc.*, 16 F.4th 192, 196 (6th Cir. 2021)). Relators have not, nor will they be able to do so.

> 2.   <u>Relators do not plead any representative examples of their allegations in the Fraud Counts.</u>

Relators fail to plead a single representative example of a false claim for

reimbursement that was submitted to the Governments for payment. Relators admit that they do not possess the requisite details and therefore **cannot** plead them. Compl. at ¶¶ 163, 170. Relators cannot use their conclusory allegations as a conduit to engage in discovery to establish their case. *See Eberhard*, 642 F. App'x at 554 (6th Cir. 2016) (denying a relator's request to conduct discovery where the relator failed to plead his FCA claims with sufficient particularity).

> a.   *Relators fail to allege representative examples of billing for medically unnecessary consults.*

Relators fail to plead any representative examples of false claims by Zamlut (or any other physician) for allegedly medically unnecessary consults that were actually submitted to and paid by the Medicare or the Michigan Medicaid programs. *See, e.g.*, Compl. at ¶¶ 77, 103. Relators do not plead any facts establishing that Zamlut improperly billed for pulmonology services as opposed to internal medicine services. *Id.* at ¶ 70. Nor do they allege any facts to establish how Relators would be qualified to make that determination. By their own allegations, both Relators provided services at DMC and HP Health *only* as internists, while Zamlut was board-certified in **both** pulmonology and internal medicine. *See id.* at ¶¶ 11–12, 59, 69.

> b.   *Relators fail to allege representative examples of billing for services not provided.*

Relators also fail to plead any representative examples of claims by Zamlut (or any other physician) for services that were not performed that were actually

submitted to and paid by the Medicare or the Michigan Medicaid programs. Relators do not plead the "information and belief" underlying these allegations, nor do Relators identify who the "other pod members were," how many other pod members were involved, or who employed the other pod members. *See, e.g.*, Compl. at ¶ 97. Relators do not allege the days, months, or even years of the seven-year period at issue. *Id.* Nor do Relators allege the names or locations of the "other hospitals" at which the purported fraud was occurring. *Id.*

Relators attached one exhibit to their Complaint (ECF No. 20-1) in support of their arguments that Zamlut and the other physicians did not treat these patients. This exhibit comprises 13 pages described by Relators as "affidavits"[12] signed by "unrelated patients" who were shown "pictures of ZAMLUT and other physicians within the pod" ***by Amine*** at unspecified dates, times, and locations. ECF No. 20-1; Compl. at ¶ 101. Relators assert no other facts concerning these documents. Each document bears a handwritten date of either July 25 or July 26, 2020, but Relators allege no facts regarding who drafted these documents, where each patient was located when the documents were signed, or whether each patient had capacity to understand what they were signing. Nor are there any allegations in the Complaint

---

[12] Relators appear to have redacted the names and signatures of each "patient" who purportedly signed the documents. And despite being referred to as "affidavits" by Relators, none of the 13 pages comprising this exhibit were signed under oath. *See* ECF No. 20-1. Rather, these documents were apparently witnessed by Amine, himself, which is not sufficient. *See* 28 U.S.C. § 1746.

explaining whether Amine was treating any of these patients himself, or, for any patients Amine was *not* treating, whether Amine's "inspection of [these patients'] charts" (Compl. at ¶ 98) was authorized by any of these patients or otherwise authorized by applicable federal and state privacy laws.

In conclusory fashion, Relators merely assert that Zamlut engaged in "fraudulent ghost rounding" and that the "schedule" somehow "concealed" Zamlut's alleged "ghost rounding." *See* Compl. at ¶ 88. Relators do not specifically allege that anyone falsified the schedule or how the schedule concealed the purported "ghost rounding." *See id.* Likewise, Relators allege that the medical records of unnamed and unnumbered patients confirm "beyond any doubt that [Zamlut] was billing for dozens of consults a day[.]" *See id.* at ¶ 89. Relators do not allege an example of a patient whose medical record was falsified. Relators simply conclude, without providing any facts, that Zamlut could not have seen patients in two neighboring states on the same unspecified day, which is insufficient under Rule 9(b). *Id.*

Notwithstanding all of the above, Relators fail to allege any improper billing or reimbursements related to these patients and documents.

> c.   *Relators fail to plead representative examples of "kickbacks" relating to the purported "systemic fraud."*

Relators allege that Zamlut engaged in a "kickback scheme" with "his employer Team Health" in Counts VI and VII. *See* Compl. at p. 2; *see also id.* at ¶¶ 35, 73–75; 132–141. But Relators do not plead a single representative example

of the alleged "kickback scheme." Relators do not allege how much revenue Zamlut or the other unnamed and unnumbered physicians generated for TH through the purported scheme. Relators do not allege any dates Zamlut (or anyone else) received a kickback "bonus" from TH or the amount of any such bonus. Relators do not allege how they have any direct, first-hand knowledge whatsoever of any physician contracts other than their own (including how compensation and bonuses were contractually calculated and paid to Zamlut or any other physicians). Relators do not allege that they have access to bank accounts belonging to Zamlut or any other physicians to confirm that the alleged bonuses were actually paid. No indicia of reliability is provided. Relators do not identify any patients, billing records, or dates of treatment that are called into question. The Court should dismiss these allegations with prejudice.

### C.   Relators Fail to Properly Plead the Remaining Elements of Their FCA and MMFCA Claims (Falsity, Knowledge, and Materiality).

Relators fail to properly plead any representative examples of fraudulently billed claims that were submitted to the Medicare or Michigan Medicaid Programs for payment. Relators have not satisfied their obligation to plead with particularity (1) that any claims were false or fraudulent; (2) that TH "knowingly" presented false claims or "knowingly" created false records for false claims; and (3) that any alleged misrepresentations made to the Governments were "material" to the Governments' decision to reimburse the claims. *See* 31 U.S.C. § 3729(a)(1)(A), (B); *Kettering,* 816

F.3d at 407–08; *Wal-Mart*, 858 F. App'x at 879.

        1.    <u>Relators fail to plead sufficient allegations of falsity.</u>

As set forth above, Relators fail to sufficiently plead facts to establish that any services were medically unnecessary or fraudulent. *See, e.g.,* Compl. at ¶¶ 62, 72, 80, 90–92, 96–106. For example, to do so would require Relators to plead facts concerning a particular patient's medical history and treatment course as of the date and time the consult was ordered.[13] Similarly, as set forth above, Relators fail to sufficiently plead facts to establish that any medical services were not actually provided. And the documents attached as an exhibit to the Complaint (ECF No. 20-1) are not properly before the Court. *See supra* Section III(B)(2)(b).

        2.    <u>Relators fail to plead sufficient allegations of TH's knowledge of any false claims, statements, or records.</u>

Relators' Complaint is devoid of particularized factual allegations asserting that TH knew of the allegedly fraudulent scheme, false claims, or false statements. *See, e.g*., Compl. at ¶¶ 104, 141. Relators' mere speculation that TH knew about the purported fraud is not sufficient to satisfy Rule 9(b) and withstand a motion to dismiss. *See Eberhard*, 642 F. App'x at 553.

---

[13] Relators allege that Zamlut engaged in self-referrals in which he would refer patients as an "internist" to himself as a "pulmonologist." *See* Compl. at ¶ 140. But again, Relators fail to allege a single representative example of any self-referral.

### 3.   Relators fail to plead sufficient allegations of materiality.

The final element of a properly pleaded FCA or MMFCA violation is that the allegedly false statement or record is "'material to the Government's decision to make the payment sought in the defendant's claim.'" *Kettering*, 816 F.3d at 408 (quoting *SNAPP II*, 618 F.3d at 505). The materiality standard in an FCA case is "demanding." *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 831 (6th Cir. 2018) ("*Prather II*") (quoting *Universal Health Svcs. v. United States ex rel. Escobar*, 579 U.S. 176, 178 (2016)).

Even if Relators properly pled the existence of any false statements or records, which they fail to do, Relators do not assert that such false statements or records were material to the payment of a single claim by either of the Governments. For example, Relators allege in conclusory fashion that "the Government, unaware of the falsity of the records, statements and claims made or caused to be made by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct." Compl. at ¶ 162. Relators fail to plead an example of any payment to TH from either of the Governments whatsoever, much less an example establishing that any false record or statement was material to such payment. The Court should accordingly dismiss these claims.[14]

---

[14] Even if this Court determines that Relators' Fraud Counts are pleaded with particularity, which TH disputes, Relators are precluded from litigating their fraud-related counts by the first-to-file bars in the FCA and MMFCA. *See* 31 U.S.C. §

## IV.   Count III Must Be Dismissed Because It Is Based upon a Statute that Does Not Exist.

Relators assert a "[v]iolation of 31 U.S.C. §3720(a)(1)(G)" in Count III of the Complaint, alleging in paragraph 124 that "Defendants unlawfully retained and failed to return the overpayments they received as a result of the false and fraudulent billings submitted to Medicare and Medicaid." However, Count III fails as a matter of law because 31 U.S.C. § 3720(a)(1)(G) does not exist and thus cannot serve as a basis for recovery.[15]

## V.   Counts VI and VII Must Be Dismissed Because the AKS Does Not Contain a Private Right of Action.

In Counts VI and VII of the Complaint, Relators allege that TH violated 42 U.S.C. § 1320a-7(b) and 42 U.S.C. § 1320a-7(b)(1)[16] of the AKS, respectively.

---

3730(b)(5); Mich. Comp. L. § 400.610a(4). The Sixth Circuit has held that "so long as a subsequent complaint raises the same or a related claim based in a significant measure on the core fact or general conduct relied upon in the first qui tam action, § 3730(b)(5)'s first-to-file bar applies." *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 516 (6th Cir. 2009), abrogated on other grounds by *United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813 (6th Cir. 2021) (internal quotation omitted); *see also United States v. SavaSeniorcare LLC*, No. 18-cv-01202, 2021 WL 1663579, at *5 (M.D. Tenn. Apr. 28, 2021). The Complaint alleges the same allegedly fraudulent scheme as the Saad Qui Tam, which was filed over three years prior to Relators' Original Complaint. As such, the Complaint should be dismissed under the first-to-file bar.

[15] To the extent that Count III was intended to relate to the FCA allegations, it fails for the reasons set forth herein in Sections II and III.

[16] 42 U.S.C. § 1320a-7(b) establishes when certain individuals and entities may be excluded from participating in Medicare and state health care programs for AKS actions. 42 U.S.C. § 1320a-7(b)(1) provides that such permissive exclusion may

However, the AKS is a criminal law that does not contain a private civil right of action. *See Concord EMS v. Oakwood Healthcare, Inc.*, No. 14-cv-13012, 2015 WL 13036949, at *3 (E.D. Mich. Mar. 25, 2015) ("[T]he Anti-Kickback Statute does not provide for a private right of action.").

The allegations in Counts VI and VII reference "remuneration," which is not a term used in 42 U.S.C. § 1320a-7(b) or 42 U.S.C. § 1320a-7(b)(1). Rather, "remuneration" appears in 42 U.S.C. § 1320a-7b. Even if Relators intended to assert Counts VI and VII under 42 U.S.C. § 1320a-7b instead of 42 U.S.C. § 1320a-7(b) and 7(b)(1), the result is the same: Relators cannot recover under 42 U.S.C. § 1320a-7b because the AKS does not contain a private civil right of action. As such, the Court should dismiss the AKS Counts as a matter of law.[17]

## VI. Count VIII Alleging FCA Retaliation Must Be Dismissed Because Relators Were Not Employees of TH.

The FCA anti-retaliation provision makes it unlawful for an "employee, contractor or agent" to be retaliated against due to efforts to stop violations of the FCA. 31 U.S.C. § 3730(h)(1). Relators do not allege that they were a "contractor or agent" of TH. Although they allege TH was their "employer," the allegation is demonstrably false because it is contradicted by Relators' own employment

---

result from a criminal fraud conviction under the AKS.

[17] Furthermore, Relators' "kickback" allegations are based upon the Fully Resolved Claims and should be dismissed with prejudice.

26

contracts. *See* Exs. B, C, D, & E. As such, dismissal is required.

The FCA does not define "employee" or even use the word "employer." The Supreme Court has held that where, as here, "Congress has used the word 'employee' without defining it," courts should look to the "conventional master-servant relationship as understood by common-law agency doctrine." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23 (1992) (internal quotation omitted).

Further, as the Sixth Circuit in *Demski v. United States Department of Labor,* 419 F.3d 488 (6th Cir. 2005), clarified: "The court must first establish that the alleged employee was in fact a 'hired party,' that is, that a contractual relationship existed" between the parties. *Merritt v. Mountain Laurel Chalets, Inc.,* 96 F. Supp. 3d 801, 812 (E.D. Tenn. 2015) (quoting *Demski,* 419 F.3d at 492). The *Demski* Court found that the petitioner was not a "hired party" as it was "undisputed that no contractual relationship of any sort existed" between the petitioner and the entity at issue. *Demski*, 419 F.3d at 492. As such, the *Demski* Court did not engage in any further analysis under *Darden* to determine whether the petitioner was an employee.

Similarly, here, Relators had no contract with TH. Rather, Relators' employment contracts set forth that they were employed by non-parties ICM and HMST, not TH. Relators' allegations that they were employed by TH should be disregarded because they are directly contradicted by their own employment contracts. *See* Exs. B, C, D, & E.

27

An FCA retaliation action cannot survive when a plaintiff fails to sufficiently allege facts establishing an employment, contractor, or agency relationship existed, warranting dismissal. *See Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063–64 (6th Cir. 2014); *El-Khalil v. Tedeschi*, No. 18-cv-12759, 2019 WL 2325610, at *3 (E.D. Mich. May 31, 2019). Dismissal is appropriate here because TH did not employ either Relator.

## VII. Relators Are Time-Barred From Bringing Any Retaliation Claims Arising From Their Employment Relationships With ICM.

Relators' decision not to name their actual employers in the Complaint is an obvious attempt to avoid the consequences of their failure to timely assert retaliation claims against ICM in the Original Complaint. Nonetheless, even if Relators were able to amend the Complaint to (i) properly name their actual employers and/or (ii) sufficiently allege a theory that would permit them to maintain a retaliation claim against TH (which they cannot), Relators are time-barred from bringing any retaliation claims arising out of their employment relationships with ICM, as any alleged retaliation occurred outside of the statute of limitations.[18]

---

[18] Relators allege that ICM is a predecessor to TH (Compl. ¶ 107). Such allegation is a conclusory allegation that this Court need not accept as true. Nonetheless, even if accepted true (which it is not) and considered by this Court, as set forth in this Section VII, any retaliation claim arising out of their employment relationship with ICM, including any alleged successor, is time-barred and, therefore, subject to dismissal.

A retaliation claim under the FCA and MMFCA may not be brought more than three years after the date when the alleged retaliation occurred. *See* 31 U.S.C. 3730(h)(3) (FCA); *United States ex rel. Yanity v. J&B Med. Supply Co.*, No. 08–11825, 2012 WL 4811288, at *5 (E.D. Mich. Oct. 10, 2012) (MMFCA).

Relators entered into separate employment agreements for their work at different facilities, including agreements with ICM to work at the DMC. Compl. at ¶¶ 64, 65, 68, 84, 153–55, 158. With respect to their employment with ICM, Relators allege the retaliation occurred when the Relators' respective employment relationships were terminated. *Id.* at ¶¶ 83, 153. Here, Asbahi's employment with ICM ended in 2019. *Id.* at ¶¶ 83, 84, 158. Asbahi therefore had to file his retaliation claims by no later than 2022. Similarly, Amine admitted that he was notified of his employment termination with ICM "in or around May of 2020[.]" *Id.* at ¶ 153. Amine therefore had to file his retaliation claims by May 2023. As Relators filed their retaliation claims on June 30, 2023, these claims are time-barred. *See, e.g., El-Khalil v. Oakwood Healthcare, Inc.,* 23 F.4th 633, 636 (6th Cir. 2022).

**VIII.  Count IX Alleging MMFCA Retaliation Must Be Dismissed Because TH Did Not Employ Relators, and Relators Failed to Plead How They Engaged in Protected Activity as Defined by the MMFCA.**

While the anti-retaliation provisions of the FCA and the MMFCA are similar, the MMFCA is narrower in scope, as the protection is limited to employees. *See* Mich. Comp. L. § 400.610c. Relators were employed by ICM and HMST, not by

29

TH. As such, Relators' retaliation claim under the MMFCA fails and should be dismissed. *See, e.g.*, *Bonds v. Compass Grp.,* No. 22-cv-11491, 2024 WL 1315852, at *2–3 (E.D. Mich. Mar. 27, 2024).

Further the MMFCA is distinct from the FCA in another way: it only protects employees who "engaged in lawful acts, including initiating, assisting in, or participating in the furtherance of an action under this act or because the employee cooperates with or assists in an investigation under this act." Mich. Comp. L. § 400.610c. Here, Relators failed to plead any such facts. This is fatal to Relators' MMFCA retaliation action, requiring dismissal. *See Mikhaeil v. Walgreens Inc*., No. 13-cv-14107, 2015 WL 778179, at *11 (E.D. Mich. Feb. 24, 2015); *Bonds*, 2024 WL 1315852, at *2–3.

## CONCLUSION

The Court should dismiss Relators' Amended Complaint against TH in its entirety with prejudice pursuant to Rule 12(b)(6).

Respectfully submitted,

Dated: July 18, 2024

*/s/ Thomas M. Schehr*
Thomas M. Schehr (P54391)
DYKEMA GOSSETT PLLC
Counsel for Team Health Holdings, Inc.
400 Renaissance Center, 37th Floor
Detroit, Michigan 48243
(313) 568-6659
tschehr@dykema.com

/s/ *Lynn Shapiro Snyder*
Lynn Shapiro Snyder (DC 296483, FL 331651, and NY 751602)
Melissa L. Jampol (NY 2964559 and NJ 235042017)
EPSTEIN BECKER & GREEN, P.C.
Counsel for Team Health Holdings, Inc.
1227 25th Street NW, Suite 700
Washington, DC 20037
(202) 861-4186
lsnyder@ebglaw.com
mjampol@ebglaw.com

/s/ *Timothy B. McConnell*
Timothy B. McConnell (TN 019136)
Laura M. Mallory (TN 031917, NY 4960340, and NJ 022492010)
MAYNARD NEXSEN P.C.
Counsel for Team Health Holdings, Inc.
4800 Old Kingston Pike, Suite 120
Knoxville, TN 37919
tmcconnell@maynardnexsen.com
lmallory@maynardnexsen.com

**Counsel for Team Health Holdings, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the Court's electronic filing system, which will forward a copy via e-mail to all counsel of record.

Dated: July 18, 2024                             Respectfully submitted,

                                                  /s/ *Thomas M. Schehr*

31