# EXHIBIT F

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively, the "United States"); the State of Michigan; IPC Hospitalists of Michigan, Inc., Inpatient Consultants of Michigan, P.C., and IPC Healthcare f/k/a IPC The Hospitalist Company (collectively referred to as "Defendant"), and Chadi Saad ("Relator"); through their authorized representatives. The entities to this agreement are collectively referred to as "the Parties."

## RECITALS

A. Defendant employs and provides hospitalists to Detroit-area hospitals.

B. Relator filed a *qui tam* action in the United States District Court for the Eastern District of Michigan captioned *United States ex rel. Saad v. IPC Hospitalists of Michigan, Inc., et al.,* Case No. 17-13656, ("the Civil Action"), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) and the Michigan Medicaid False Claims Act, M.C.L. §§ 400.601-400.615.

C. The United States and the State of Michigan (collectively "the governments") contend that Defendant submitted or caused to be submitted false claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 -1395111 ("Medicare"); and the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid").

D. The governments contend that they have certain civil claims against Defendant, during the period from June 17, 2014 - March 8, 2023, arising from (1) upcoding inpatient CPT codes 99223, 99233, and 99239 for services provided or supposedly provided in the State of Michigan;

1

and (2) allowing hospitalists to regularly work "impossible days" within the State of Michigan, in connection with the use of CPT billing codes 99221, 99222, 99223, 99231, 99232, 99233, 99238 and 99239. Upcoding is alleged fraudulent medical billing in which a bill is sent for a service that is more expensive than the service that was actually performed. An impossible day occurs when a hospitalist allegedly provides for so many inpatient services or procedures in one day that there is no way the hospitalist could have performed them all. The aforementioned conduct is referred to below as the "Covered Conduct."

E. Defendant denies the allegations in Paragraphs C and D above and all liability in connection with the Civil Action. Neither this Settlement Agreement, nor the performance of any obligation under it, including any payments, nor the fact of settlement is intended to be an admission of liability or wrongdoing, or other expression reflecting on the merits of the dispute.

F. This Settlement Agreement is neither an admission of liability by Defendant nor a concession by the governments that their claims are not well founded.

G. Relator claims entitlement to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree, and covenant as follows:

## **TERMS AND CONDITIONS**

1. Defendant shall pay to the United States $2,785,817.00, of which $903,569.27 is restitution, no later than 30 days after the Effective Date of this Agreement by electronic funds

transfer pursuant to written instructions to be provided by the office of the United States Attorney.

Defendant shall pay to the State of Michigan $482,183.00, of which $146,430.73 is restitution, no later than 30 days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the office of the State of Michigan.

The total amount due to the United States and the State of Michigan, in the amount of $3,268,000.00, is referred to as the "Settlement Amount."

2. Conditioned upon the United States receiving its share of the Settlement Amount and as soon as feasible after receipt, the United States shall pay $487,517.97 to Relator by electronic funds transfer.

Conditioned upon the State of Michigan receiving its share of the Settlement Amount and as soon as feasible after receipt, the State of Michigan shall pay $84,382.03 to Relator by electronic funds transfer.

The total amount due to Relator from the United States and the State of Michigan, in the amount of $571,900.00, is referred to as "Relator's Share".

3. Defendant agrees to pay Relator's reasonable expenses, attorneys' fees and costs and shall make one payment totaling $101,047.50 by electronic funds transfer pursuant to written instructions to be provided by Relator's counsel no later than 30 days after the Effective Date of this Agreement.

4. Subject to the exceptions in Paragraph 6 (concerning reserved claims) below, and upon the governments' receipt of the Settlement Amount, the governments release Defendant together with each of their current and former parent corporations; direct and indirect subsidiaries; affiliates;

3

brother or sister corporations; including each of their divisions; current or former corporate owners; and the corporate successors and assigns of any of them, from any civil or administrative monetary claim the governments have for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Michigan Medicaid False Claims Act, M.C.L. §§ 400.601- 400.615; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5. Subject to the exceptions in Paragraph 6 below, and upon the receipt of the Settlement Amount, Relator and Relator's counsel, for himself and for his heirs, successors, attorneys, agents, and assigns, fully and finally release Defendant and any "Affiliated Companies" ("Affiliated Companies" is defined herein as Defendants, together with each of their current and former parent corporations of any Affiliated Companies; direct and indirect subsidiaries of any Affiliated Companies; professional entities (e.g., professional corporations, professional associations, and professional limited liability companies) managed by or otherwise affiliated with direct or indirect subsidiaries of any Affiliated Companies, and including each of their divisions; current or former corporate owners; members, officers, directors, employees, agents, attorneys, or insurers; and the corporate successors and assigns of any of them), from any claims that Relator has asserted, or could have asserted, or may assert in the future, relating to any conduct that occurred from the beginning of time to the Effective Date of this Settlement Agreement.

6. Notwithstanding the releases given in Paragraph 4 and 5 of this Agreement or any other term of this Agreement, the following claims and rights of the United States and the State of Michigan are specifically reserved and are not released:

4

    a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.    Any criminal liability;

    c.    Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

    d.    Any liability to the United States (or its agencies) or the State of Michigan (or its agencies) for any conduct other than the Covered Conduct including, but not limited to, conduct occurring outside the State of Michigan;

    e.    Any liability based upon obligations created by this Agreement;

    f.    Any liability of individuals;

7.    Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and M.C.L. § 400.610a(5)(b). Conditioned upon Relator's receipt of the Relator's Share, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the governments, their agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730 or the Michigan Medicaid False Claims Act, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

8.    Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases Defendant and affiliates, and its officers, agents, and employees, from any liability to

Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) and M.C.L. § 400.610a(9) for expenses or attorneys' fees and costs, or from any other claims, demands, grievances, lawsuits, causes of actions and/or damages based on any claims existing as of the Effective Date of this Settlement Agreement.

9. Defendant waives and shall not assert any defenses Defendant may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

10. Defendant fully and finally releases the governments, their agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that it has asserted, could have asserted, or may assert in the future against the governments, their agencies, officers, agents, employees, and servants, related to the Covered Conduct or the governments' investigation or prosecution thereof.

11. Defendant fully and finally releases the Relator from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendant has asserted, could have asserted, or may assert in the future against the Relator, related to the Covered Conduct and the Relator's investigation and prosecution thereof.

12. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Defendant agrees not to resubmit to any Medicare contractor or any state payer any

previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

13. Defendant agrees to the following:

    a. <u>Unallowable Costs Defined:</u> All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendant, its present or former officers, directors, employees, shareholders, and agents in connection with:

    (1)    the matters covered by this Agreement;

    (2)    the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

    (3)    Defendant's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

    (4)    the negotiation and performance of this Agreement;

    (5)    the payment Defendant makes to the governments pursuant to this Agreement and any payments that Defendant may make to Relator, including costs and attorneys' fees; and are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

    b. <u>Future Treatment of Unallowable Costs:</u> Unallowable Costs shall be separately determined and accounted for by Defendant, and Defendant shall not charge such Unallowable

Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendant or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

  c. <u>Treatment of Unallowable Costs Previously Submitted for Payment:</u> Defendant further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendant or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendant agrees that the United States, at a minimum, shall be entitled to recoup from Defendant any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

  Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendant or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Defendant or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States or the State of Michigan to audit, examine, or re-examine Defendant's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

14. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 15 (waiver for beneficiaries paragraph), below.

15. Defendant agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

16. Relator and Relator's Counsel represent that they have filed no other lawsuits or initiated any other proceedings against Defendant that remain pending other than the Civil Action; that they are not currently involved in, aware of, or conducting any investigation related to facts that might reasonably be viewed as potentially giving rise to an action that might be filed pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b); and that they have no present intention of conducting such an investigation or pursuing such an action.

17. Relator represents that he is not currently employed or engaged (e.g., as an independent contractor) by Defendant or any affiliate, parent, or subsidiary thereof. Relator waives and relinquishes any and all claims, rights, or interest in reinstatement or future employment or engagement with Defendant or any affiliate, parent, or subsidiary thereof, except as stated herein.

Relator will not apply for or otherwise seek employment or engagement with Defendant or with any affiliate, parent or subsidiary thereof.

18. Relator and Relator's Counsel agree not to issue press releases or initiate (directly or indirectly, including through an agent or third party) media inquiries in connection with the settlement, nor to post information regarding the settlement on social media or website, with the exception that Relator's Counsel can state, if an inquiry is made by a third party and not initiated by Relator or Relator's Counsel (directly or indirectly, including through an agent or third party), that they were the counsel of record in the Civil Action.

19. Upon receipt of the payments described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

20. Except as otherwise provided in Paragraph 3, above, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

21. Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

22. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of Michigan. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

23. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

24. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

25. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

26. This Agreement is binding on Defendant's successors, transferees, heirs, and assigns.

27. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

28. All Parties consent to the governments' disclosure of this Agreement, and information about this Agreement, to the public.

29. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

DATED: 8/17/2023  BY: _____
　　　　　　　　　　　　JOHN POSTULKA
　　　　　　　　　　　　Assistant United States Attorney

DATED: 8/16/23  BY: *Lisa M. Re /seg*
　　　　　　　　　　　　LISA M. RE
　　　　　　　　　　　　Assistant Inspector General for Legal Affairs
　　　　　　　　　　　　Office of Counsel to the Inspector General
　　　　　　　　　　　　Office of Inspector General
　　　　　　　　　　　　United States Department of Health and Human Services

**THE STATE OF MICHIGAN**

DATED: _____  BY: _____
　　　　　　　　　　　　KATHERINE M. PITTEL
　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　Health Care Fraud Division
　　　　　　　　　　　　Michigan Department of Attorney General
　　　　　　　　　　　　P.O. Box 30218
　　　　　　　　　　　　Lansing, MI 48909

DATED: _____  BY: _____
　　　　　　　　　　　　MEGHAN E. GROEN
　　　　　　　　　　　　Senior Deputy Director
　　　　　　　　　　　　Behavioral and Physical Health and Aging Services Administration
　　　　　　　　　　　　Michigan Department of Health and Human Services
　　　　　　　　　　　　400 S. Pine St.
　　　　　　　　　　　　Lansing, MI 48933

## THE UNITED STATES OF AMERICA

DATED: _____  BY: _____
                      JOHN POSTULKA
                      Assistant United States Attorney


DATED: _____  BY: _____
                      LISA M. RE
                      Assistant Inspector General for Legal Affairs
                      Office of Counsel to the Inspector General
                      Office of Inspector General
                      United States Department of Health and Human Services

## THE STATE OF MICHIGAN

DATED: 8/16/2023  BY: *[signature]*
                      KATHERINE M. PITTEL
                      Assistant Attorney General
                      Health Care Fraud Division
                      Michigan Department of Attorney General
                      P.O. Box 30218
                      Lansing, MI 48909

DATED: 8/16/2023  BY: *[signature]*
                      MEGHAN E. GROEN
                      Senior Deputy Director
                      Behavioral and Physical Health and Aging Services Administration
                      Michigan Department of Health and Human Services
                      400 S. Pine St.
                      Lansing, MI 48933

**DEFENDANT**

DATED: 8/15/23

BY: *(signature)*
PHIL MCSWEEN
General Counsel for Defendant
265 Brookview Centre Way
Suite 203
Knoxville, TN 37919

DATED: 8/15/23

BY: *(signature)*
LINDA THACKER
Chief Counsel for Defendant
265 Brookview Centre Way
Suite 203
Knoxville, TN 37919

DATED: 8/15/23

BY: *(signature)*
KIRSTEN BACKSTROM
Counsel for Defendant
Epstein Becker & Green
1227 25th Street, NW
Suite 700
Washington, DC 20037

**RELATOR**

DATED: _____

BY: _____
CHADI SAAD, M.D., Relator

DATED: _____

BY: _____
BEN M. GONEK
Counsel for Relator
Gonek & Belcher Law, P.C.
14290 Northline Rd.
Southgate, Michigan 48195

13

**DEFENDANT**

DATED: _____ BY: _____
PHIL MCSWEEN
General Counsel for Defendant
265 Brookview Centre Way
Suite 203
Knoxville, TN 37919


DATED: _____ BY: _____
LINDA THACKER
Chief Counsel for Defendant
265 Brookview Centre Way
Suite 203
Knoxville, TN 37919


DATED: _____ BY: _____
KIRSTEN BACKSTROM
Counsel for Defendant
Epstein Becker & Green
1227 25th Street, NW
Suite 700
Washington, DC 20037

**RELATOR**

DATED: 8/15/23 BY: *[signature]*
CHADI SAAD, M.D., Relator

DATED: 8/15/23 BY: *[signature]*
BEN M. GONEK
Counsel for Relator
Gonek & Belcher Law, P.C.
14290 Northline Rd.
Southgate, Michigan 48195

13