UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA and
THE STATE OF MICHIGAN,

      Plaintiffs,

*ex rels.* AMINE P. AMINE, M.D., and
REDWAN ASBAHI, M.D.,

      Relators,

                                  Case No. 21-10799

v.                              Hon. Matthew F. Leitman

TEAM HEALTH HOLDINGS, INC. *et al.*,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 49)

In this *qui tam* action, Relators Amine P. Amine, M.D. and Redwan Asbahi, M.D. allege that Defendant Mahmud Zamlut, M.D. and his employer, Defendant Team Health Holdings, Inc. ("Team Health"), engaged in a fraudulent medical billing scheme intended to increase Team Health's revenue and lead to higher bonuses for Zamlut. (*See* Am. Compl., ECF No. 20.)  Relators bring two sets of claims against Team Health and Zamlut: (1) a variety of fraud claims brought pursuant to the False Claims Act, 31 U.S.C. § 3729, *et seq.* (the "FCA"), the Michigan Medicaid False Claims Act, Mich. Comp. Laws § 400.601, *et seq.* (the

"MMFCA"), and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b (the "Anti-Kickback Statute"); and (2) retaliation claims brought pursuant to the FCA and the MMFCA. (*See id.*)

Now before the Court is Defendants' motion to dismiss Relators' claims. (*See* Mot. to Dismiss, ECF No. 49.)  For the reasons explained below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I

## A

Team Health is "a healthcare services company that recruits, employs, and then outsources thousands of healthcare providers including physicians to various hospitals and/or hospital groups" throughout the country. (Am. Compl. at ¶ 8, ECF No. 20, PageID.123.)  Zamlut is a physician who is "board certified in both pulmonology and internal medicine[.]" (*Id.* at ¶ 69, PageID.141.)  He has privileges to provide medical services at several hospitals, including the Detroit Medical Center in Detroit, Michigan (the "DMC") and Highpoint Health in Lawrenceburg, Indiana. (*See id.* at ¶ 10, PageID.124.)  At all times relevant to this action, Zamlut "had a contract with and was paid by" Team Health. (*Id.* at ¶ 57, PageID.138.)

In 2017, Amine began employment with a healthcare company that later became Team Health. (*See id.* at ¶ 11, PageID.124-125.)  Amine claims that Team Health and Zamlut "wrongfully terminated" his employment in August of 2020. (*Id.*)

Asbahi began employment with "Team Health [in] approximately July 2016." (*Id.* at ¶ 12, PageID.125.)  In February of 2019, he "resigned . . . from work on behalf of Team Health at the DMC," but he "remained employed with Team Health on a part time or 'fill in basis' elsewhere" "until the fall of 2020 when he was terminated and locked out." (*Id.* at ¶ 158, PageID.161.)

Amine and Asbahi both reported to Zamlut. (*See id.* at ¶¶ 58-59, PageID.139.) He served as their "pod leader" and played a "senior supervisory role." (*Id.* at ¶¶ 56, 59, PageID.138-139.)

According to Amine and Asbahi, Zamlut ran a fraudulent billing scheme during their time with Team Health. (*See generally* Am. Compl., ECF No. 20.)  As part of this scheme, Zamlut would (1) "demand[] every patient be referred to him for a pulmonology consult" even when such a consult was not medically necessary so that he could "bill for the higher rate for a specialist consult" (*id.* at ¶¶ 62, 89, 103 PageID.140, 146, 150); (2) "unlawfully bill[] patients he never saw" to inflate billing for Team Health and receive bonuses for himself (*id.* at ¶ 73, PageID.142); (3) "bill[] on the same day patients in both Michigan and Indiana" when he "didn't treat patients in either state" (*id.* at ¶ 80, PageID.143); and (4) bill more patients than he could possibly see during the time frame he reported (*id.* at ¶ 91, PageID.146).

Amine and Asbahi say that Team Health and Zamlut "terminated" their employment "after [they] report[ed] that they were being pressured into fraudulent

3

conduct by Zamlut and also for refusing to participate in the fraudulent billing scheme[.]" (*Id.* at ¶ 157, PageID.161.)

**B**

Amine and Asbahi originally filed this action in April of 2021. (*See* Compl., ECF No 1.)  Their original Complaint named Team Health and Zamlut as Defendants and asserted a number of fraud claims under the FCA, the MMFCA, and the Anti-Kickback Statute. (*See id.*)  Amine and Asbahi filed an Amended Complaint in June of 2023. (*See* Am. Compl., ECF No. 20.)  The Amended Complaint reasserted the fraud claims from the original Complaint and added claims that Team Health and Zamlut retaliated against Amine and Asbahi by terminating their employment in violation of the FCA and MMFCA. (*See id.* at Counts VIII, IX.) (From this point forward, the Court refers to Amine and Asbahi collectively as "Relators", which is the terminology for their position in the Amended Complaint.)  The specific claims asserted in the Amended Complaint are as follows:

- **Count I:** Alleges violations of 31 U.S.C. § 3729(a)(1)(A) ("Section 3729(a)(1)(A)"), a provision of the FCA that imposes liability on a person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval[.]"

- **Count II:** Alleges violations of 31 U.S.C. § 3729(a)(1)(B) ("Section 3729(a)(1)(B)"), a provision of the FCA that imposes liability on a person

4

who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim[.]"

- **Count III:** Alleges violations of 31 U.S.C. 3729(a)(1)(G) ("Section 3729(a)(1)(G)"), a provision of the FCA that imposes liability on a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government[.]"

- **Count IV:** Alleges violations of Mich. Comp. Laws § 400.607(1) ("Section 607(1)"), a provision of the MMFCA that provides that a person "shall not make or present or cause to be made or presented to an employee or officer of this state a claim under the social welfare act . . . upon or against the state, knowing the claim to be false."

- **Count V:** Alleges violations of Mich. Comp. Laws § 400.603(1) ("Section 603(1)"), a provision of the MMFCA that provides that a person "shall not knowingly make or cause to be made a false statement or false representation of a material fact in an application for Medicaid benefits."

- **Counts VI, VII:** Allege violations of 42 U.S.C. §§ 1320a-7b(b) and 7b(b)(1), provisions of the Anti-Kickback Statute that impose liability on a person who

"knowingly and willfully solicits or receives any renumeration" or "knowingly and willfully offers or pays any renumeration" "in return for referring an individual for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program."

- **Count VIII:** Alleges violations of 31 U.S.C. § 3730(h), a provision of the FCA that prohibits retaliation "because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action" under the FCA or because of "other efforts to stop" violation(s) of the FCA.

- **Count IX:** Alleges violations of Mich. Comp. Laws § 400.610c, a provision of the MMFCA that prohibits retaliation "because the employee engaged in lawful acts, including initiating, assisting in, or participating in the furtherance of an action" under the MMFCA or "because the employee cooperates with or assists in an investigation under" the MMFCA.

(*See* Am. Compl., ECF No. 20.)

Team Health and Zamlut have now filed a motion to dismiss the Amended Complaint. (*See* Mot. to Dismiss, ECF No. 49.)  The Court held a hearing on the motion on February 6, 2025 (*see* 02/06/2025 Mot. Hr'g Tr., ECF No. 63), and it is prepared to rule on the motion.

## II

Team Health and Zamlut seek dismissal of Relators' claims under two rules: Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure.  The Court sets forth the governing standards under those rules below.

## A

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *See id.* When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). Mere "conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**B**

Rule 9(b) requires a plaintiff asserting a fraud claim "to state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Complaints alleging FCA violations must comply with Rule 9(b)'s requirement that fraud be pled with particularity[.]" *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011). MMFCA claims must also be pleaded with particularity. *See United States v. Wal-Mart Stores East, LP*, 858 F. App'x 876, 880 (6th Cir. 2021) (dismissing FCA and MMFCA claims for failure to plead with particularity under Rule 9(b) and noting that the FCA and MMFCA "are identical in every relevant respect here and are frequently analyzed in tandem").

In order to satisfy Rule 9(b), a relator asserting a fraud claim under the FCA or the MMFCA must identify at least one particular false claim that was submitted to the government for payment. As the Sixth Circuit has explained:

> [The FCA] "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment." *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 411 (6th Cir. 2016) (cleaned up). For that reason, our circuit has imposed a "clear and unequivocal requirement that a relator allege specific false claims when pleading a violation of" the Act. *Id.* (cleaned up). Thus, under Rule 9(b), "[t]he identification of at least one false claim with specificity is an indispensable element of a complaint that alleges a False Claims Act violation." *United States ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 881 (6th Cir. 2017) (cleaned up). Rule 9(b) therefore "does not permit a False Claims Act plaintiff merely to describe a private scheme

> in detail but then to allege simply that claims requesting illegal payments must have been submitted." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (cleaned up).

*United States ex rel. Owsley v. Fazzi Assocs., Inc.*, 16 F.4th 192, 196 (6th Cir. 2021). "At the pleading stage, this requirement is stringent: 'where a relator alleges a 'complex and far-reaching fraudulent scheme,' in violation of § 3729(a)(1), it is insufficient to simply plead the scheme; he must also identify a representative false claim that was actually submitted to the government.'" *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017) (quoting *Chesbrough*, 655 F.3d at 470).

A relator must identify the required "specific claim[]" in "one of two ways." *Owsley,* 16 F.4th at 196. First, under the "default rule," a relator may "identify a 'representative claim that was actually submitted to the government for payment.'" *Id.* (quoting *Ibanez*, 874 F.3d at 915). Second, a relator "'can otherwise allege facts––based on personal knowledge of billing practices—supporting a strong inference that *particular identified claims* were submitted to the government for payment.'" *Id.* (emphasis in original) (quoting *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 838 F.3d 750, 771 (6th Cir. 2016)). If the relator fails to identify at least one specific claim in one of these two ways, his fraud claim under the FCA and/or MMFCA must be dismissed. *See id.*

**III**

The Court begins with Relators' fraud claims.  As noted above, Relators bring these claims under three provisions of the FCA and two provisions of the MMFCA. The fraud claims all fail for the same reason: the allegations within those claims do not satisfy Rule 9(b).

**A**

Relators' first and fourth fraud claims (Counts I and IV of the Amended Complaint) allege that Team Health and Zamlut violated Section 3729(a)(1)(A) and Section 607(1), which prohibit the knowing presentation of a false claim. *See* 31 U.S.C. § 3729(a)(1)(A); Mich. Comp. Laws § 400.607(1).  Claims under these two provisions may be analyzed "in tandem" with each other for purposes of Rule 9(b). *United States v. Wal-Mart Stores East, LP*, 858 F. App'x 876, 880 (6th Cir. 2021) (analyzing claims under Section 3729(a)(1)(A) and Section 607(1) together).  These claims fail as a matter of law because Relators have failed to identify a specific false claim that was presented to any governmental agency for payment and have likewise failed to plead sufficient facts to create a "strong inference that particular identified claims were submitted to the government for payment." *Owsley,* 16 F.4th at 196.

Instead of identifying a specific claim, Relators attach to the Amended Complaint a series of forms – that Relators mistakenly call "affidavits" – completed by thirteen patients (the "Patient Forms"). (*See* Am. Compl. at ¶ 101, ECF No. 20,

PageID.149; Patient Forms, ECF No. 20-1, PageID.168-180.)  The Patient Forms purport to contain statements by the patients attesting that they were never seen by Zamlut and other members of his team.  A representative sample Patient Form is set forth below:



(Patient Forms, ECF No. 20-1, PageID.168.)

Relators allege that the charts for the patients who completed the Patient Forms contain unidentified "medical notes" by Zamlut and other members of his

team. (Am. Compl. at ¶ 101, ECF No. 20, PageID.149.)  Relators say that since the charts contain "medical notes," Zamlut and his team must have submitted billings related to the notes, and they insist that such bills would have been false because Zamlut and his team never saw or treated those patients.  Relators contend that, at a minimum, their allegations related to the Patient Forms give rise to an inference that particular false claims were submitted to a governmental agency for payment.

The Court disagrees.  Relators have not included any details concerning the content of the notes in the patients' charts, nor have Relators provided any information as to when (or how often, or why, or how) a note on a patient chart leads to the submission of a bill.  Without such details it would be mere speculation to conclude that bills must have been submitted simply because the patients' charts contained the unidentified notes mentioned in the Amended Complaint.  Moreover, Relators do not allege whether any of the patients who completed the Patient Forms received Medicaid or Medicare, and thus even if bills *were* submitted for the patients who completed the Patient Forms, it is not clear that those bills would have been submitted to the Medicaid or Medicare programs (or any other governmental agency).  Finally, Relators do not allege the dates or types of services for which Zamlut and his team allegedly billed.  For all of these reasons, Relators' allegations related to the Patient Forms do not satisfy the Sixth Circuit's "stringent" requirement

for the identification of a specific claim that was actually submitted to the government. *Ibanez*, 874 F.3d at 914.

The Court will therefore **GRANT** the motion to dismiss Relators' claims in Counts I and IV of the Amended Complaint alleging violations of Section 3729(a)(1)(A) and Section 607(1).

## B

The Court now turns to Relators' claim in Count V of the Amended Complaint alleging violations of Section 603(1). As noted above, Section 603(1) prohibits a person from making "a false statement or false representation of a material fact in an application for Medicaid benefits." Mich. Comp. Laws § 400.603(1). As with Relators' other fraud claims, Section 603(1) is subject to Rule 9(b)'s heightened pleading standard. *See Geller v. Michigan*, No. 17-13233, 2019 WL 2150393 (E.D. Mich. Apr. 26, 2019), *report and recommendation adopted sub nom.*, *Boucher v. Michigan*, No. 17-13233, 2019 WL 2143202 (E.D. Mich. May 16, 2019).

As pleaded, Relators' allegations do not satisfy Rule 9(b) because Relators have not identified a single particular false statement or a single particular application for Medicaid benefits. Relators merely identify an allegedly fraudulent scheme. Their allegations are not sufficient to satisfy Rule 9(b). *Cf. Owsley*, 16 F.4th 192. Finally, Relators do not offer any standalone defense of this claim.

The Court will therefore **GRANT** the motion to dismiss Relators' claim in Section V of the Amended Complaint alleging violations of Section 603(1).

## C

The Court next turns to Relators' claim in Count II of the Amended Complaint alleging violations of Section 3729(a)(1)(B). As explained above, that section imposes liability on a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). "Section 3729(a)(1)(B) requires a relator to 'plead a connection between the alleged fraud and an actual claim made to the government.'" *Ibanez*, 874 F.3d at 916 (quoting *Chesbrough*, 655 F.3d at 473).

Relators' claim under Section 3729(a)(1)(B) suffers from the same shortcomings as their Section 3729(a)(1)(A) claim: they have not pointed to any false claim made to the government. In other words, "although [R]elators allege [D]efendants made false or fraudulent statements" in order to increase Team Health's revenues, "there are no allegations connecting these statements to any claim made to the government." *Id.*

Accordingly, Relators have failed to plead their Section 3729(a)(1)(B) claim with the requisite particularity under Rule 9(b). The Court will therefore **GRANT** the motion to dismiss Relators' claim in Count II of the Amended Complaint alleging violations of Section 3729(a)(1)(B).

**D**

The Court next addresses Relators' claim in Count III of the Amended Complaint that the Defendants violated Section 3729(a)(1)(G).  That section "imposes liability on one who accepts overpayment from the government and fails to refund that overpayment—a so-called 'reverse false claim.'"[1] *Ibanez*, 874 F.3d at 916.  "It is uncontested that the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to reverse false claims under § 3729(a)(1)(G)." *United States ex rel. Sibley v. Univ. of Chicago Med. Ctr.*, 44 F.4th 646, 655 (7th Cir. 2022). And just as Rule 9(b) requires a relator to identify specific false claims when asserting fraud claims under Sections 3729(a)(1)(A) and 3729(a)(1)(B), it also requires a relator to plead "specific representative examples" of false claims or fraudulent retentions of payments when asserting reverse false claims under Section 3729(a)(1)(G) of that statute. *Id.*  Accordingly, the Sixth Circuit has repeatedly affirmed the dismissal of claims under Section 3729(a)(1)(G) where a relator has failed to identify any specific false submissions to a governmental agency. *See Owsley*, 16 F.4th at 196–197 (affirming dismissal of claims under Sections

---

[1] Alternatively, a relator can establish a Section 3729(a)(1)(G) violation if "the relator pleads adequate 'proof that the defendant made a false record or statement at a time that the defendant owed to the government an obligation—a duty to pay money or property.'" *Ibanez*, 874 F.3d at 916 (quoting *Chesbrough*, 655 F.3d at 473).  Relators have not attempted to plead that Defendants were subject to any such duty. The Court therefore does not consider that argument here.

3729(a)(1)(A), 3729(a)(1)(B), *and* 3729(a)(1)(G) where relators failed to identify specific false claims); *United States ex rel. Crockett v. Complete Fitness Rehab., Inc.*, 721 F. App'x 451, 459 (6th Cir. 2018) (affirming dismissal of claim under Section 3729(a)(1)(G) where relator failed to identify submission of particular false claims to the government).

Here, as noted above, Relators have failed to identify any particular false claims for payment or any particular wrongful retention of specific payments from the government. Instead, Relators allege in a conclusory fashion that Team Health and Zamlut "unlawfully retained and failed to return the overpayments they received as a result of the false and fraudulent billings submitted to Medicare and Medicaid." (Am. Compl. at ¶ 124, ECF No. 20, PageID.154.)   Relators' failure to identify any specific false claims in support of this theory is fatal. *See Crockett,* 721 F. App'x at 459 (explaining that where reverse false claim theory rests upon wrongful retention of funds paid as a result of fraudulent claims, relator must identify specific representative false claims).

The Court will therefore **GRANT** the motion to dismiss Relators' claim under Section 3729(a)(1)(G) in Count III of the Amended Complaint.[2]

---

[2] Team Health and Zamlut argue that Relators' fraud claims under the FCA fail for an additional reason beyond Relators' failure to satisfy Rule 9(b). Specifically, they allege that Relators have released their claims through prior settlement agreements. (*See* Mot., ECF No. 49, PageID.303-305.) The Court need not and does not reach this additional argument.

**E**

Relators offer several counterarguments as to why the Court should not dismiss their claims under the FCA and MMFCA.  None persuade the Court that the claims should survive.

**1**

Relators first contend that they have satisfied the "relaxed" pleading standard established by the Sixth Circuit in *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 838 F.3d 750 (6th Cir. 2016). (Resp., ECF No. 55, PageID.427-428.)   In *Prather*, the Sixth Circuit held that a relator asserting a fraud claim under the FCA may satisfy Rule 9(b) by alleging "facts—based on personal knowledge of billing practices—supporting a strong inference that particular identified claims were submitted to the government for payment." *Id.* at 771.  The Court explained above why Relators have failed to meet that standard here.

But it is worth further highlighting that the allegations found sufficient in *Prather* were far more substantial than those made by Relators here.  The relator in *Prather* had "detailed knowledge of the billing and treatment documentation" and made "specific allegations" at a high "level of detail regarding: (1) specific identified claims for payment that (2) the relator reviewed for billing-related purposes." *Id.* at 770.  Indeed, the relator in *Prather* "provided information about the treatment of [specific patients] . . . [and] identified approximately the dates of the applicable

17

episode of care and the dates on which the physician certification of need and face-to-face documentation were signed, alleged that requests for anticipated payment and for final payment were submitted (sometimes giving dates of submission for one or both), and identified the amount that was requested for the final payment." *Id.* at 769. She also "provided the start and end dates for the treatment episode, along with identifying information for the specific provider of home-health services and the specific . . . community in which the patient resided . . . and alleged that a request for anticipated payment was submitted to Medicare for each." *Id.* at 770. That is substantially more than Relators have alleged here. Because Relators' allegations fall far short of those present in *Prather*, that decision does not support their contention that their claims under the FCA and MMFCA are viable here.

## 2

Relators next counter that the Court should not dismiss their claims under the FCA and MMFCA because Team Health "can easily ascertain whether or not the allegations are true, whether they have been billed, and if bonuses were allocated based on this type of conduct." (Resp., ECF No. 55, PageID.425.) Relators suggest that because the information is "within [Team Health's] dominion and control," their allegations concerning their "observation[s] and statements made to them" together with their identification of "representative samples is sufficient" to withstand the motion to dismiss. (*Id.*, PageID.424.) But as noted above, Relators have not

identified representative samples of particular claims that were submitted to the government.  And Relators cannot survive the motion to dismiss "on the basis that necessary information is exclusively within the defendant's control, even in the context of the less rigorous pleading requirements of Federal Rule of Civil Procedure 8." *Chesbrough*, 655 F.3d at 472.

### 3

Finally, Relators argue that they should be permitted to amend their Complaint yet again.  The Court declines to allow Relators to amend again for two primary reasons.

First, Relators have not properly sought leave to amend.  They "neither moved formally to amend nor proffered a proposed amended complaint." *Owsley*, 16 F.4th at 197 (affirming denial of leave to amend).  Instead, at the end of their response to the motion to dismiss, Relators asked that the Court grant them leave to amend "[i]n the event the Court finds any of the[ir] claims . . . to be deficient." (Resp., ECF No. 55, PageID.443.)  But "requesting leave to amend in a single sentence without providing the grounds for the amendment or a proposed amended complaint [is] not a sufficiently particular request" for amendment. *Patterson v. Novartis Pharms. Corp.*, 451 F. App'x 495, 499 (6th Cir. 2011).

Second, and more importantly, during the hearing on Defendants' motion to dismiss, counsel for Relators acknowledged that they do not currently have enough

information to cure the pleading deficiencies the Court identified above. (*See* 02/06/2025 Mot. Hr'g Tr., ECF No. 63, PageID.597-598.)  Counsel for Relators stated that "the only thing [they] would be able to do," "if" they were "permitted enough time," would be to "go back and look to see specifically what [Relators] provided" to the government during a related criminal investigation to see whether there was additional information that could be added to a Second Amended Complaint to satisfy the pleading requirements under Rule 9(b). (*Id.*)  Counsel for Relators admitted that he "didn't know if billing was included or not" in those records. (*Id.*)  Under all of these circumstances – where Relators do not currently have enough facts to satisfy Rule 9(b) in a Second Amended Complaint and do not know if they could gather such facts if given the opportunity to do so – leave to amend is properly denied. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003) (affirming denial of leave to amend as futile where plaintiff admitted in response to motion to dismiss that he had "pled all the facts that he [knew]"); *Beydoun v. Sessions*, 871 F.3d 459, 470 (6th Cir. 2017) (affirming denial of oral motion for leave to amend where plaintiff "never informed the district court of what facts he would use to supplement his claim" that would "allow[] him to withstand a motion to dismiss"); *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361, 383–84 (S.D.N.Y. 1997) (denying leave to amend as futile where

plaintiff "conceded that it possesses no further facts to plead in support of" its claims).

## IV

The Court next moves to the Relators' claims under the Anti-Kickback Statute in Counts VI and VII of the Amended Complaint.  The Anti-Kickback Statute prohibits medical providers from making referrals in return for "remuneration." 42 U.S.C. § 1320a-7b; *see also United States ex rel. Martin v. Hathaway*, 63 F.4th 1043 (6th Cir. 2023).  The Anti-Kickback Statute does not contain a private right of action. *Concord EMS v. Oakwood Healthcare, Inc.*, 2015 WL 13036949, at *3 (E.D. Mich. Mar. 25, 2015).  For that reason, Relators' claims under the Anti-Kickback Statute fail as a matter of law.

The Court acknowledges that claims for violations of the Anti-Kickback Statute may be brought pursuant to Section 3729(a)(1)(A). *See, e.g.*, *Martin*, 63 F.4th at 1046 (noting that Section 3729(a)(1)(A) "covers claims for 'items or services resulting from a violation' of the Anti-Kickback Statute") (quoting 42 U.S.C. § 1320a-7b(g)).  However, as noted above, any claim for a violation of Section 3729(a)(1)(A) must either identify a specific false claim that was presented to the government for payment or create a "strong inference that particular identified claims were submitted to the government for payment." *Owsley,* 16 F.4th at 196.  As

explained above, Relators have not done so.  The Court will therefore **GRANT** the motion to dismiss those claims.

## V

The Court concludes with Relators' claim in Count VIII of the Amended Complaint that Team Health and Zamlut retaliated against them in violation of the FCA.[3]  Team Health and Zamlut seek dismissal of that claim on two grounds.  The Court addresses each ground below and concludes that most of the claim survives. Only one portion of the claim – related to one of Asbahi's periods of employment – should be dismissed at this point.

## A

Team Health and Zamlut first argue that Relators' FCA retaliation claim should be dismissed because Relators were not employed by Team Health and thus may not assert a claim for retaliation against Team Health based upon the termination of their employment.  The Court declines to dismiss on this basis.

The FCA protects "[a]ny employee, contractor, or agent" from retaliation "because of lawful acts done by the employee, contractor, agent, or associated others

---

[3] Relators also brought a retaliation claim under the MMFCA. (*See* Am. Compl. at Count IX.)  Team Health and Zamlut moved to dismiss that claim, but Relators did not respond to that portion of the motion. (*See* Resp., ECF No. 55; 02/06/2025 Mot. Hr'g Tr., ECF No. 63, PageID.620.)  During the hearing on the motion to dismiss, counsel for Relators acknowledged that Relators' MMFCA retaliation claim was therefore forfeited. (*See* 02/12/2025 Mot. Hr'g Tr., ECF No. 63, PageID.629.)  The Court will therefore **DISMISS** that claim.

in furtherance of an action" under the FCA or "other efforts to stop" violation(s) of the FCA. 31 U.S.C. § 3730(h). Relators contend that they may pursue a claim against Team Health under this provision because they were employed by Team Health. (*See* Resp., ECF No. 55, PageID.432-435; Am. Compl. ¶¶ 11-12, ECF No. 20, PageID.124-125.)

Team Health and Zamlut counter that the Court should disregard Relators' allegations that they were employed by Team Health because Relators' employment contracts "directly contradict[]" their contention that they were Team Health employees. (Mot., ECF No. 49, PageID.318-319.) According to Team Health and Zamlut, the contracts reflect that Relators were employed by Inpatient Consultants of Michigan and Hospital Medicine Services of Tennessee – not Team Health. (*See* Employment Contracts, ECF Nos. 49-3, 49-4, 49-5, 49-6.) Team Health and Zamlut argue that the Court may consider the employment contracts – which are not attached to the Amended Complaint – without converting the pending motion into one for summary judgment because the contracts are referenced in the Amended Complaint and are central to Relators' retaliation claim. (*See* Mot., ECF No. 49, PageID.296 n.5.) *See Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (explaining that "a court may consider … exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment").

The Court concludes that even if it may consider the employment contracts at this stage, it is not appropriate to dismiss the FCA retaliation claim on the basis that Relators have failed to sufficiently plead that they were employees of Team Health. Relators have plausibly alleged that Team Health was at least one of their employers. Stated another way, Relators have plausibly alleged that even if they were employed by other entities, they were simultaneously employed by Team Health – that Team Health effectively served as their joint employer or co-employer.  Indeed, Relators made several allegations that, if accepted as true, show that Team Health and Zamlut, a Team Health employee, controlled and directed essential aspects of their work. (*See, e.g.*, Am. Compl. at ¶¶ 59, 60, ECF No. 20, PageID.139-140.)  Moreover, Amine alleges that Team Health made the decision to end his employment and directed Zamlut to inform him (Amine) of that decision. (*Id.* at ¶ 147, 153, PageID.158, 160.)  And both Relators claim that Zamlut was appointed by Team Health to be their "pod leader." (*Id.* at ¶ 59, PageID.139.)  Under these circumstances, the Court concludes that Relators have plausibly alleged that Team Health was at least one of their employers during the relevant time period and that it would thus be inappropriate to dismiss the FCA retaliation claim at this point on the basis that, as a matter of law, Team Health did not employ the Relators.[4]  The issue

---

[4] The Court acknowledges that Relators did not use the term "joint employer" in the Amended Complaint.  But the Court is not bound by the legal labels or terminology used in that pleading. *See, e.g.*, *Mirambeaux v. Att'y Gen. United States*, 977 F.3d

of whether Team Health may be deemed Relators' employer for purposes of their FCA retaliation claim is best resolved at the summary judgment stage.

## B

Team Health and Zamlut next argue that the FCA retaliation claim is time-barred.  The Court agrees in part.  As explained below, the portion of the claim based upon Asbahi's 2019 firing is time-barred.  The remainder of the claim is not subject to dismissal as time-barred.

## 1

The Court begins with Asbahi's FCA retaliation claim.  Asbahi identifies two instances in which his employment was terminated.  He first alleges that he was "forced to resign" from his primary employment with Team Health in February of 2019 due to "pressure to consult Zamlut unnecessarily and the pressure Zamlut created to bill at any cost and without regard to the law." (Am. Compl. at ¶ 83, ECF No. 20, PageID.144.)  Asbahi further claims that after his primary employment ended in February of 2019, he continued working with Team Health on an "as needed" basis until he was "completely terminated" in October of 2020. (*Id.* at ¶¶ 84-85.)

---

288, 292 (3d Cir. 2020) (court "not bound by the label attached by a party to characterize a claim" but looked "beyond the label to analyze the substance of [the] claim"); *Richards v. Baton Rouge Water Co.*, 142 So.3d 1027, 1031 (La. Ct. App. 2014) (court "not bound by the legal labels a plaintiff affixes to her claims, but" will "look beneath the labels to ascertain the gravamen of plaintiff's claims").

The Court agrees with Team Health and Zamlut that Asbahi's FCA retaliation claim is time-barred to the extent that it is based upon his alleged constructive discharge in February of 2019. The statute of limitations for an FCA retaliation claim is three years, 31 U.S.C. § 3730(h)(3), and Asbahi did not assert his FCA retaliation claim against the Defendants until June of 2023 – when he first added the claim in the Amended Complaint. (*See* Am. Compl., ECF No. 20.) Because the alleged 2019 constructive discharge occurred more than three years before Asbahi first raised the FCA retaliation claim, that claim is time-barred to the extent that it rests upon that alleged constructive discharge.

Asbahi counters that under Rule 15(c)(1) of the Federal Rules of Civil Procedure, his claim based on the 2019 constructive discharge is timely because it relates back to the claims in the original Complaint – which was filed on April 9, 2021. (*See* Resp., ECF No. 55, PageID.441-443.) Rule 15(c)(1) provides that an amendment to a complaint "relates back to the date of the original pleading" when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "In determining whether the new claims arise from the same 'conduct[,] transaction or occurrence,'" the Court's analysis is "guided by whether the defendant had been placed on notice that he could be called to answer for the allegations in the amended pleading." *Durand v. Hanover Ins. Grp., Inc.*, 806 F.3d

367, 375 (6th Cir. 2015) (quoting *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 516 (6th Cir. 2007)).  A claim that relates back is "timely even though it was filed outside of an applicable statute of limitations." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010).

The Court concludes that Asbahi's FCA retaliation claim arising out of his alleged constructive discharge in 2019 does not relate back to the original Complaint because the original Complaint did not put Team Health or Zamlut on notice that they could be called to answer an FCA retaliation claim.  That pleading did not contain any allegations that Asbahi engaged in protected activity by undertaking acts "in furtherance of an action under this section or other efforts to stop 1 or more violations of" the FCA. 31 U.S.C. § 3730(h).   Moreover, the gravamen of the allegations in the original Complaint was fraud, not the termination of Asbahi's employment.  For these reasons, the original Complaint did not provide notice that an FCA retaliation claim may be coming.

Notably, numerous courts have found that FCA retaliation claims like Asbahi's do not relate back to FCA fraud claims in an earlier pleading. *See, e.g.*, *United States ex rel. Whitcomb v. Physiotherapy Assocs., Inc.*, 555 F.Supp.2d 949, 953–53 (W.D. Tenn. 2008) (considering factors and finding FCA retaliation claims did not relate back to FCA fraud claims).  These courts have "tend[ed] to see retaliation claims as arising out of occurrences different from those underlying the

fraud alleged, even though the relator claims to have been terminated for reporting that fraud." *United States ex rel. Deering v. Physiotherapy Assocs., Inc.*, 601 F.Supp.2d 368, 375–77 (D. Mass. 2009) (holding that FCA retaliation claim did not relate back to FCA fraud claim).[5]  Finally, Asbahi has not cited a single case in which any federal court has held that a retaliation claim like the one he asserts in the Amended Complaint relates back to an earlier fraud claim like the ones asserted in the original Complaint.  For all of these reasons, the Court concludes that Asbahi's FCA retaliation claim based upon his alleged 2019 constructive discharge does not relate back to the original Complaint and is time-barred.

However, Asbahi's FCA retaliation claim based on his allegation that he was fired from his "as needed" position in October of 2020 is timely. (Am. Compl. at ¶¶ 63, 84-85, ECF No. 20, PageID.140, 144.)  The Amended Complaint was filed less

---

[5] *See also United States ex rel. Nichols v. Omni H.C., Inc.*, No. 02-cv-66, 2008 WL 906426, at *3 (M.D. Ga. Mar. 31, 2008) (finding no relation back because "the operative facts in a retaliatory discharge claim center around the employee, his employment history, and his conduct vis-à-vis his employer rather than the employer's allegedly fraudulent conduct vis-à-vis the Government"); *Herman v. Coloplast Corp.*, No. 2016 WL 7042191 (D. Minn. Nov. 9, 2016); *United States ex rel. Brumfield v. Narco Freedom, Inc.*, No. 12 Civ. 3674, 2018 WL 5817379, at *5 (S.D.N.Y. Nov. 6, 2018) ("Although the original complaint mentioned retaliation, the retaliation referred to was retaliation against the relators for not participating in a fraud. The bare allegations in the complaint could not plausibly have put [the Defendant] on notice of a[n] [FCA] retaliation claim against him."); *United States ex rel. Smart v. Christus Health*, 626 F.Supp.2d 647, 658 n.12 (S.D. Tex. 2009) (relation back would be improper because "Relator's retaliation claim is a new wrong, distinct from the fraud alleged in the rest of the complaint").

than three years after that alleged firing.  Thus, Asbahi's FCA retaliation claim is not time-barred to the extent that it rests upon the claimed October 2020 firing.

2

No portion of Amine's FCA retaliation claim is time-barred.  Amine alleges that he was terminated in August of 2020. (*See* Am. Compl. at ¶ 11, ECF No. 20. PageID.124-125.)  That is less than three years before the Amended Complaint was filed on June 30, 2023.  Therefore, Amine's FCA retaliation claim is timely.

Team Health and Zamlut counter that Amine "admitted that he was notified of his employment termination" in May of 2020 – more than three years before the Amended Complaint was filed. (*See* Mot., ECF No. 49, PageID.321.)  Team Health and Zamlut argue that Amine's FCA retaliation claim is therefore not timely.  The Court is not yet persuaded that Amine's FCA retaliation claim is time-barred on that basis.

While Amine alleges he was given a "verbal 90-day notice of termination" from Team Health and Zamlut in May of 2020 (Am. Compl. at ¶ 153, ECF No. 20, PageID.160), he also claims that Zamlut thereafter "vacillated on if he was really going to go through with the verbal termination" and told Amine in an "email after the verbal notice that he 'hadn't been terminated.'" (*Id.*)  Amine further claims that Zamlut told him he would likely be given a new contract but that "the 90 day period was going to be used to 'review his performance' and 'see what happens.'" (*Id.* at ¶

29

154.)  And he says that he was then "terminated after reporting that [he was] being pressured into fraudulent conduct by Zamlut and also for refusing to participate in the fraudulent billing scheme[.]" (*Id.* at ¶ 157, PageID.161.)  These allegations, taken together, plausibly allege that the purported termination notice in May of 2020 was not an effective or actual adverse action and that the limitations period therefore was not started by that notification.  Accordingly, the Court declines to dismiss Amine's FCA retaliation claim as time-barred based upon the May 2020 termination notice. The Court concludes that the effect of that May 2020 notice on the limitations period is best resolved at the summary judgment stage.

## VI

For all of the reasons explained above, Defendants' motion to dismiss (ECF No. 49) is **GRANTED IN PART** and **DENIED IN PART** as follows.

The motion is **GRANTED** with respect to Relators' fraud claims under Sections 3729(a)(1)(A), 3729(a)(1)(B), 3729(a)(1)(G), 607(1), and 603(1) (Counts I–V of the Amended Complaint) and Relators' MMFCA retaliation claim (Count IX of the Amended Complaint).  The motion is also **GRANTED** with respect to Relators' claims under the Anti-Kickback Statute (Counts VI and VIII of the Amended Complaint).  Finally, the motion is **GRANTED** with respect to Asbahi's FCA retaliation claim arising out of his allegedly wrongful termination and/or constructive discharge in February of 2019.  Those claims are **DISMISSED**.

30

The motion is **DENIED** with respect to the remainder of the FCA retaliation claim (Count VIII of the Amended Complaint).

      **IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 10, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 10, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126